GEORGE DUNNOVAN *et al.*

*v.*

BAZIL GREEN.

1. RAILROAD ELECTION—*for subscription—registry of voters.* At an election in a township for and against subscribing stock to a railroad company, under the charter which does not require a registry of the voters, the registry law of 1865 does not apply to such an election, the presumption being that this should be held like other township elections. But if a registry was required, the court does not hold, that its omission would avoid bonds in the hands of innocent holders.

2. ELECTION—*majority of the voters of the town—majority cast.* Where the charter authorizing the election, provides that when a majority of the votes shall be for subscription, it shall be made, it refers to a majority of the votes cast, and not a majority of the voters residing in the township.

3. TAX—*levied by auditor—excessive.* Where it appears that the Auditor of Public Accounts has levied a larger sum than is necessary for the payment of the annual interest on bonds registered in his office, under a specified election, and there is no allegation that no other bonds of the town are so registered in the auditor's office, the court will not presume the levy is excessive; that must be shown.

4. AUDITOR—*power to levy tax—constitution.* The act of the 16th of April, 1869, making it the duty of the Auditor of Public Accounts to ascertain the amount of interest that will accrue on town and other bonds registered in his office, and certify the amount to the county clerk, to be by him extended on the collector's books, and collected in the manner

State revenue is collected, is not violative of sec. 5, art. 9, of the constitution of 1848. The last clause of that section vests the legislature with the power to require all property of individuals in the corporate limits, to be taxed for the payment of debts contracted under authority of law. The first· clause is a limitation on the power of the general assembly⁷to levy a tax or create a corporate debt, or to authorize others to do so, but the latter clause is imperative, that the general assembly shall require all property within the corporation to be taxed for payment of corporate debts that have been created, and operates as an express authority to impose taxes to pay such debts, nor does it limit their power in the choice of the instruments for the purpose.

5. That section does not provide, that the legislature shall require such tax to be levied through the corporate authorities, but they may select the agents to levy and collect the tax for the payment of the debt. There is a broad distinction between the two clauses; the first only authorizes that body to confer power to levy taxes for corporate purposes, and to create a corporate debt; but the last clause fully empowers the legislature to cause taxes to be collected for the payment of corporate indebtedness when created. This provision of the law is not unconstitutional.

6. TAXES—*when unauthorized.* Under the 7th sec. of the act of 1869, it is unlawful to register bonds with the Auditor of State, until the railroad in aid of which they have been voted, shall be completed near or into the limits of the corporation, and cars are running thereon; and none of the benefits of the act can be claimed, unless the subscription or donation creating the corporate debt, was first submitted to an election of the legal voters within the corporation, under provisions of laws of the State, and a majority of the legal voters living therein were in favor of such aid, subscription or donation: *Held,* that where any of these requirements are wanting, the language of the act being imperative, the auditor has no power to make the assessment of the tax, and the courts will enjoin its collection.

7. STATE CREDIT—*to corporations.* The 38th sec. of art. 13 of the constitution of 1848, which prohibits the State from giving its credit to or in aid of any individual, or association or corporation, is not violated by levying and collecting such a tax as this. It is not declared to be a State tax; the auditor's certificate shows it to be a local tax, and for municipal purposes. The tax is levied on property in the township, and no portion is taken from the State revenue, general or special, to aid the railroad company, or to pay the debts of the township. It is not, directly or indirectly, giving the credit of the State in aid of this or any other road, individual or corporation. The fact that it was levied by the auditor, extended in the column of State taxes by the county clerk in the collector's books, was mere form, and in nowise changed its nature; and it, when collected, is kept as a separate fund, and applied to the local purpose for which it was collected. Hence, the levy of this tax did not violate the latter provision of the constitution.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDWIN S. LELAND, Judge, presiding.

The opinion states the facts of the case.

Messrs. GLOVER, COOK & CAMPBELL, for the appellants.

Mr. OLIVER C. GRAY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, filed by a number of tax payers, in the LaSalle circuit court, against the collector of Dayton township, in that county, to restrain the collection of a portion of the taxes extended against them on the collector's warrant. The bill alleges that the tax was levied under an order from the State Auditor, on the county clerk, to raise a fund to pay the interest on $12,000 of bonds issued by the township, for stock in the Ottawa, Oswego & Fox River Valley Railway Company, which had been registered in the auditor's office. The bill alleges that the bonds were illegally issued by the town authorities, inasmuch as there was no registry of the voters prior to the election, and that a majority of the voters residing in the township, did not vote in favor of issuing the same; that the bonds were not legally registered, and that the levy was largely in excess of the amount required to pay the interest due upon these bonds; that the township officers alone have the power to levy such a tax; and it was extended on the collector's warrant as a part of the State tax.

On the 28th of February, 1857, the general assembly adopted an act, authorizing certain cities, counties, incorporated towns and townships, to subscribe to the stock of certain railroads. The first section is as follows:

"SECTION 1.   *Be it Enacted by the People of the State of Illinois, represented in the General Assembly,*   That any city,

5—57TH ILL.

county, incorporated town, or any township now or hereafter organized under the township organization laws, which may be situated on or near the route of the Ottawa, Oswego & Fox River Railroad, or of the Chicago, Amboy & Upper Mississippi Railroad, or of the Joliet & Mendota division of the Joliet & Terre Haute Railroad, as the same may have heretofore, or may hereafter be surveyed and located, may become subscribers to the stock of any such road, and may issue bonds for the amount of such stock so subscribed, with coupons for interest thereon attached, under such limitations and restrictions and on such conditions as they may choose and the directors of said company may approve, the proposition for said subscription having been first submitted to the inhabitants of such city, town, county or township, and approved by them. And upon application of any fifty voters of any city, county, incorporated town or township as aforesaid, specifying the amount to be subscribed and the conditions of said subscription, it shall be the duty of the clerk of such city, town, county or township, immediately to call an election in the same manner that other elections for said city, county, town or township are called, for the purpose of determining whether said city, county, township or town will subscribe to the stock of said road ; and if a majority of said votes shall be 'for subscription,' then the county court or board of supervisors having jurisdiction over county matters in said county, or the corporate authorities of said city or town, or the supervisors and town clerk of such township so voting, shall cause said subscription to be made, and upon its acceptance by the directors of said company, shall cause bonds to be issued in conformity with said vote, which bonds shall in no case bear a higher rate of interest than 10 per cent per annum, and shall not be of less denomination than one thousand dollars, and shall be accepted by said company at their par value."

Section four declares that, "It shall be the duty of the proper authorities of any city, incorporated town, county or

township, issuing bonds as aforesaid, to make all necessary arrangements and provide for the prompt payment of all interest and other liabilities accruing thereon, and to levy such taxes as may be necessary therefor as other taxes are levied by them."

The election was held on the 17th day of April, 1869, at which the vote for subscription was taken, and a majority of those voting were in favor of the proposition. We have been referred to no law which repeals the act of 1857, and the election must have been held under its provisions. It being in force, and the election being held under it, we must look to its requirements to determine whether the election is legal and the bonds properly issued.

In the case of *The People ex rel.* v. *Dutcher,* 56 Ill. 144, it was held, that under the law of 1865, a registry was not required in a township election of this character; that unless otherwise expressed, the presumption is, that it was intended, when power is given to hold an election in a township, it shall be held in the same manner as other town elections, and as no registry of the voters is required, but is excepted for town meetings at which town officers are elected, the registry law does not apply to an election of this character. That case is decisive of this question. But if it was not, we are not prepared to hold that a failure on the part of the proper officers to make the registry, or the board of election to require each voter to make the required affidavit, would render the election void, or be ground for vacating the office of those elected, or for holding bonds thus voted and issued, and in the hands of innocent holders, void. The legislature has not so declared, even if that body possesses such power. It imposes a heavy penalty on any officer who shall wilfully violate any of the provisions of the law, but does not attempt to declare the election void.

It is next insisted, that a majority of all the voters residing in the township did not vote in favor of issuing these bonds. The act of 1857, we have seen, provides for calling the election, and declares that if a majority of the votes shall be for

68          DUNNOVAN *et al. v.* GREEN.          [Sept. T.,

Opinion of the Court.

subscription, then the county, city, town or township, shall cause the subscription to be made, and the bonds to be issued. This provision evidently refers to the majority of the votes cast at that election, and not to the majority of the legal voters residing in the township. If such had been the intention, other and very different language would have been employed. We are clearly of the opinion that a fair and the only reasonable construction that can be given to this act, is that a majority of the votes cast at the election is sufficient. This election seems, so far as the bill discloses, to have been called in the mode required, by the proper authority, and to have resulted in favor of subscription.

It is also urged, that the amount of tax levied by the auditor is excessive, as it will produce an amount largely above the interest which fell due on the 1st of July, 1870. The auditor's certificate states that $1.15 on each $100 of valuation of the taxable property of the township, will be required to pay the interest becoming due on the 1st of July, 1870, on bonds issued by the township of Dayton, and registered in the auditor's office. There is no allegation that these $12,000 of bonds, issued by the township, are all that are registered by the auditor. For aught that appears, there may be other bonds of the township, in an amount requiring all of this fund to pay interest then falling due, registered in the auditor's office. That officer does not say that the tax is levied to meet the interest on these bonds, but to pay interest on registered bonds. We can not presume that there are no other bonds so registered, and the bill fails to allege there are not others. This objection is not well taken.

It is next urged, that the auditor, under the constitution of 1848, could not be empowered to levy this tax, but that it devolved alone on the township authorities. The act of the 16th of April, 1869, (Sess. Laws, 318, sec. 4.) confers power upon the auditor, and it is made his duty to ascertain the amount of interest that will accrue upon the registered bonds of any county, township &c., and transmit a certificate, stating the

estimated per centum required to meet such interest, and that per centum shall thereupon be deemed added to and a part of the per centum which may be levied for purposes of State revenue, and shall be so treated by the clerk, &c., in making such estimates, and books for the collection of taxes, and which shall be collected with the State revenue.

It is contended that this provision is violative of sec. 5, art. 9 of the constitution of 1848. The first clause of that section declares, that the corporate authorities of counties, townships, &c., may be vested with power to assess and collect taxes for corporate purposes. But the second clause is broader and more comprehensive. It declares, that "The general assembly shall require that all of the property within the limits of municipal corporations, belonging to individuals, shall be taxed for the payment of debts, contracted under authority of law."

It will be observed, that the first clause of this section only authorizes the general assembly to confer power upon such corporations, to levy a tax for corporate purposes. This has been held a limitation on the power of the general assembly to levy a tax or create a debt upon municipal corporations, or to authorize others to do so. That they might confer the power, but it was only with the citizens or the corporate authorities to determine whether they would incur the debt, or levy the taxes for corporate purposes. *The People ex rel.* v. *The Mayor of Chicago,* 51 Ill. 17; *Harward* v. *Levee & Drainage Co.* ib. 130 and other subsequent cases.

But it will be observed, that the second clause of this section is imperative upon the legislature, in requiring it to cause taxes to be levied upon the property within the corporation, to pay any indebtedness lawfully incurred by such body. This is an express authority conferred upon the general assembly, to cause to be levied a tax to pay such indebtedness. It is more; it makes it the duty of that body to cause such taxes to be collected. It gives them no option in the matter. Nor does it limit their power as to the instrumentalities that shall be employed. It does not require the levy for such purpose

to be made through the corporate authorities, but leaves the legislature free to select the agents who shall impose and collect the tax. Hence, it is seen, that there is a broad and palpable distinction between the first and second clauses of this section; the first only authorizing the legislature to confer power on such corporations to collect taxes, for ordinary corporate purposes, and to create a corporate debt, while the last clause fully empowers the legislature to cause taxes to be levied to pay the debts of such bodies. And in the exercise of that power, they have required the auditor to levy the tax necessary to pay such indebtedness. These bonds having been legally issued, the auditor had power, under this law, to make the levy of the tax in controversy, and this provision of the law does not conflict with the constitution of 1848.

It is next urged, that the bonds were registered without authority of law.

The seventh section of the act of 1869, (laws p. 316.)declares that it shall not be lawful to register any bonds under the provisions of that act, or to receive any of the benefits or advantages to be derived therefrom, until after the railroad, in aid of the construction of which the debt was incurred, shall have been completed near to or in such county, township, city or town, and cars shall have run thereon; and none of the benefits, advantages or provisions of the act shall apply to any debt, unless the subscription or donation, creating such debt, was first submitted to an election of the legal voters of the county, township, city or town, under the provisions of the laws of this State, and a majority of the legal voters living in the county, township, city or town were in favor of such aid, subscription or donation. The bill in this case alleges, and the demurrer admits, that the railroad to which this subscription was made, had not been completed near to or in the township, and cars had not been run thereon. And that at the election which voted this subscription, a majority of all the legal voters living in the township had not voted in favor of the proposition, but while there was a majority of the votes

cast at the election, there were many less than a majority of all the legal voters living in the township.

A majority of the court hold, that the language of this act is imperative, and when it appears that these requirements of the statute are wanting, the auditor has no power to make the assessment, and that when the non-compliance with the statute appears, the court should grant relief; that the requirements of the statute are peremptory and that the acts it has prescribed are conditions precedent to the action of the auditor in estimating and certifying the tax to the county clerk, and that a non-conformity with these requirements of the statute having been alleged in the bill, the court below erred in sustaining the demurrer and dismissing the bill.

It is also urged, that this tax was levied and extended as State revenue, and was for that reason violative of sec. 38, art. 3 of the constitution of 1848, which prohibits the State from giving its credit to or in aid of any individual, association or corporation. This act does not, in terms, declare this a State tax. The auditor's certificate shows its purpose to be entirely a local tax, and for municipal purposes, being for the payment of interest on township indebtedness. The tax is levied on the property exclusively in the township, and no portion of the tax is taken from the State revenue, general or special, to aid the railroad company, or to pay the debts of the township. We fail to see that this tax, thus levied and applied, can be, in the remotest degree, regarded as giving the credit of the State in aid of this or any other road, individual or corporation, either directly or indirectly. It is but collecting a special tax, levied alone on the the property situated in a single township, to pay the interest on a debt created by the township. The fact that it was levied by the auditor, extended on the collector's warrant by the county clerk, in the column with the levy for State revenue, was mere matter of form, and in nowise changed its nature or purpose, and is, under the law, when collected, required to be kept separate from the State revenue, and applied to a local purpose. It is the substance, and not mere form or

name, that changes things. But this tax is not even called State revenue, and we have seen that the general assembly has power to employ other agencies than the town officers, to levy such taxes.

We are unable to concur in the construction given to the seventh section of this act of 1869. The last clause of that section authorizes such bonds to be registered, when the affidavit therein specified, shall be filed. We think when that affidavit is filed, the registration may be made, and the tax levied and collected under that act, until the registration shall be arrested by an appropriate proceeding, to which the holders of the bonds thus registered are parties. There is nothing appearing from which it can be inferred that an affidavit was not filed, and we think it should be presumed it had been, until the contrary is shown.

For the errors indicated, the decree of the court below is reversed and the cause remanded.

*Decree reversed.*