Tyler McWhorter *et al.*

*v.*

The People *ex rel.* The Chicago and Rock River Railroad Company.

1. MUNICIPAL SUBSCRIPTION — *law authorizing subscription to capital stock of a railroad company does not authorize a vote to subscribe to a division of the road.* Where the charter of a railroad company authorized certain municipalities to subscribe to the capital stock of the company, and a vote was taken to subscribe to a certain division of the road: *Held,* that the vote was unauthorized, and the company could not compel the municipality thus voting to make the subscription to its capital stock.

2. And where such company was authorized to receive such subscriptions, on such terms and in such amounts as it might deem best in accordance with its by-laws, and the company, in its by-laws, divided the road into divisions, and a subscription was voted by a township to the first division of the road: *Held,* that the charter of the company must govern, and as that only authorized the tax-payers to vote a subscription to the whole capital stock of the company, the vote was void, and conferred no right on the company to compel the subscription.

3. SAME—*conditions in the notice of the election must be complied with.* The charter of a railroad company authorized certain counties, towns, etc., to subscribe to its capital stock, upon an election being had upon the question, and a majority of the voters voting at such election voting in favor of the proposition. Under this, an election was called in a township to vote upon a proposition to subscribe $50,000, but the proposition contained a condition that the bonds to be issued in payment of the subscription should be such as to entitle them to registration, under the act of 1869. Under the latter act a majority vote of the legal voters *living* in the township was necessary to entitle the bonds to registration. The election had resulted in a majority of the votes cast in favor of the proposition, but not in a majority of the legal votes of the township: *Held*, that the condition precedent in the notice of the election not having been complied with, the election was null and void.

APPEAL from the Circuit Court of Rock Island county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Messrs. BECKWITH, AYER & KALES, for the appellants.

Messrs. McCAGG, FULLER & CULVER, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an application for a *mandamus*, by The People, on the relation of the Chicago and Rock River Railroad Company, made to the circuit court of Whiteside county, and taken, by change of venue, to the Rock Island circuit court, the object of which was to compel the proper officers of the town of Montmorency, in Whiteside county, to subscribe fifty thousand dollars to the capital stock of that company, and issue its bonds therefor in payment of such subscription.

The petition sets forth the act of the general assembly of this State incorporating this company, and the route of the road, and also sections six, ten and eleven of the charter, upon the true interpretation of which this controversy mainly depends.

The sixth section authorizes the directors of the company to receive subscriptions to their capital stock from any corporation, county, city or town, on such terms and in such

amounts as they may deem for the interest of the company, in accordance with the by-laws of the company.

Section ten authorized any incorporated city, town, or any township organized under the township organization laws of this State, along or near the route of the road, to subscribe to its capital stock.

Section eleven provides for holding the election to determine the question of subscription, and provides, "if it shall appear that the majority of all the legal voters of such city, town or township, voting at such election, have voted for subscription, it shall be the duty of the president of the board of trustees, or other executive officers of such town, and of the supervisors in townships, to subscribe to the capital stock of said railroad company, in the name of said city, town or township, the amount so voted to be subscribed, and to receive from said company the proper certificate therefor." The president, or other executive officer, was authorized and required to issue bonds in the name of the corporation voting the subscription, bearing ten per cent per annum interest, payable annually, and payable within twenty years.

It is alleged the railroad company was duly organized in May, 1869, and at an election called and held in the township of Montmorency, on the 28th day of August, of that year, a majority of the legal voters of that township voting at such election voted to subscribe fifty thousand dollars to the capital stock of the company.

It is further alleged that, after the result was declared, the railroad company, on the 12th day of February, 1872, made a demand on the township officers to subscribe to the capital stock, and issue bonds in payment of their subscription, which they refused to do, on various pretexts.

It appears that parties friendly to this enterprise, and connected with the railroad company, prepared, and circulated among the tax-payers a petition, which was duly signed by eleven tax-payers and legal voters of the town, and presented to the town clerk, which bears upon its face strong indications

of careful preparation, and which, being necessary to a full understanding of the case, is here copied, leaving out mere formal parts:

"The undersigned, legal voters and tax-payers in said town, do hereby petition you that a special meeting of the legal voters of said town be called, to be holden at the usual place of voting in said town, at which the question of said town making a subscription to the capital stock of the Chicago and Rock River Railroad Company shall be submitted to them, and that such call be made in the within words and figures."

These "words and figures" are as follows:

"SPECIAL TOWN MEETING.

"WHEREAS, By section ten (10) of an act to incorporate the Chicago and Rock River Railroad Company, in force March 24, 1869, any county, incorporated city or town, or any township organized under the township organization laws of the State, along or near the route of said railroad, is authorized to subscribe to the capital stock of said company;

"AND WHEREAS, Said railroad company has constituted that portion of their road extending from Rock Falls to Amboy the first division of said road, and created a separate and distinct stock for the construction of said first division;

"AND WHEREAS, A petition has been presented to me, signed by ten citizens, who are legal voters and tax-payers in the said township of Montmorency, asking that a special election shall be called in said town, at which the question of said town subscribing to the capital stock of said railroad company, to the amount of fifty thousand dollars, shall be submitted to the legal voters of said town; the bonds to be issued in payment of said stock to be in such form as to entitle the same to registration, under the act of the legislature in that behalf, in force 16th April, 1869; said bonds to be issued to said company only when said road is in readiness for operating into or near said township;

"*Now, therefore,* The legal voters of said town are hereby notified to meet at the school house in district number two (2), on the 28th day of August A. D. 1869, for the purpose of voting for or against said town subscribing the sum of fifty thousand dollars to the capital stock of the first division of the Chicago and Rock River Railroad Company. At said election, the form of voting shall be, 'for subscription,' or 'against subscription.'"

At the time and place appointed in this notice an election was held, the polls being opened at 11 o'clock in the morning. At 12 M. there was an adjournment of one hour, and a closing at 6 in the afternoon. The votes being counted, as appears by the returns made by the moderator and clerk, seventy-seven votes were found for subscription, and thirty-four against. It is alleged in the petition that, from this canvass, it appeared that a majority of the legal voters voting at the election had voted for subscription.

It is further alleged in the petition that a special town meeting of the voters of this town was called by the clerk, on the petition of twelve freeholders, and was held on the 7th day of May, 1870, to reconsider the former vote; that the polls were kept open from 10 o'clock in the morning to 5 o'clock in the afternoon; that sixty votes were cast, of which fifty-nine were in favor of, and one vote against, reconsideration.

The return sets forth that, prior to making the request and call for the first special election to vote on the question of subscription, the relator had falsely, and with a view to influencing the result, given out that it had created a separate and distinct stock to represent the first division of the road. 2. That it was falsely given out to the voters that the subscription, if made, should be paid for in the bonds of the town, to be issued in such manner and form as to entitle them to registration, as provided by law; and that the town should have the benefit thereof; and that the proposed election in that

behalf should be in pursuance of the act of the general assembly, approved April 16, 1869, referred to in the call for the election; and that the vote should be such as to entitle the town to the benefits of that act. 3. That, in fact, relator had no authority to create a separate or independent stock for construction of each of its divisions; nor had it created a separate and distinct stock for the construction of its first division, and that the road was not yet completed. 4. That a majority of the voters living in the town at the time of such election did not vote in favor of the subscription.

In was also alleged, in the return, that the petition and call for the election were prepared by the relator, and that relator procured the signatures thereto.

A general demurrer was interposed to this return, which the court sustained, and awarded a peremptory writ of mandamus.

To reverse this judgment, the town authorities appeal, and make several points as ground of reversal.

The first point is, that the question of subscription to the capital stock of this company was not submitted to the voters at the election.

By section ten of the act incorporating this company, quoted above, the town was authorized to subscribe to the capital stock of the company as a unit, as an entirety, as one thing. We look in vain in the act for authority to divide the road or to authorize a vote for subscription to the capital stock of any one division of it. The road was projected from Rock River to Chicago, passing through a very productive country, capable of furnishing to the road a vast amount of profitable business. Stock in such a road, as one entire work, as a leading line of rail communication, promised value to the subscribers. It was in such a road the town of Montmorency was authorized to take stock to the amount of fifty thousand dollars, the whole capital of the road being one million of dollars.

It is true, the sixth section of their charter, cited above, authorizes the directors of the company to receive subscriptions

to their capital stock, from any corporation, county, etc., on such terms and in such amounts as they may deem for the interest of the company, in accordance with its by-laws.

It is assumed by appellees that the by-law of the company authorized this division of the road, and that it was referred to in the notice given by the clerk calling the election.

It is stated in this notice that the company has constituted that portion of the road extending from Rock Falls to Amboy the first division of the road, and created a separate and distinct stock for the construction of said first division. How, it may be asked, did the clerk know this, and by what authority did he publish it to the voters? He states them as facts of which his position could not give him knowledge, and it may be safe to say he had no such knowledge. The paper was prepared, undoubtedly, by some agent of the company, to operate upon the voters, it being designed as a sort of guarantee that the money they voted should be expended on the road in their town.

But does the by-law compel the company to maintain this division? Are these by-laws like the laws of the Medes and Persians—irrepealable? Suppose the three divisions shall not be completed, where, then, will be the merger, as provided in the by-law? Under this by-law, what power could compel this subscription to the making the first division? The promise of the company is of no binding force, for at their next meeting they can repeal the by-law in which it is contained.

Conceding the power to the company to prescribe the terms on which subscriptions shall be made, it is incumbent on them that the charter is observed. By the charter, the tax-payers of this town could only vote a subscription to the capital stock of the company. This they were not called upon to do, and have not done.

This point, we think, is well taken. It is true, this court has uniformly held, in the cases cited by appellees, that where

subscriptions have been voted in good faith to aid in the construction of railroads, they will be enforced, if they have been made in pursuance of law, but not otherwise.

The second point made by appellants we pass by as unnecessary to be noticed.

The third and most important point, that in the proposition to subscribe which was submitted to the people, there was coupled a condition that the bonds to be issued should be such as to entitle them to registration under the provisions of the act of April 16, 1869.

Section seven of that act declares that none of its benefits, advantages or provisions shall apply to any debt unless the subscription or donation creating it was first submitted to an election of the legal voters of the town, under the provisions of the laws of this State, and a majority of the legal voters living in such town were in favor of such aid, subscription or donation; and any town shall have the right, upon making any subscription or donation to any railroad company, to prescribe the conditions upon which such bonds, subscriptions or donations, shall be made; and such bonds, etc., shall not be valid until such conditions precedent shall have been complied with.

This " condition precedent " prescribed in the notice not being complied with, there is no alternative but to declare the election null and void.

It was not bonds not entitled to registration the people voted, but it was those so entitled; and the proposition not having received the sanction of a majority of the voters living in the town at the time of the election, the proposition was, consequently, lost. *Dunnovan* v. *Green,* 57 Ill. 63.

It was of immense importance to the tax-payers of this town that their bonds should be such as to entitle them to registration. The county clerk, or other proper officer, upon issuing them, was required to register them in a book to be kept for that purpose in his office, showing the date, amount, number, maturity and rate of interest, and to what railroad

they were subscribed; and this for the protection of the tax-payers. The holders of such bonds, in order to receive the benefits of the act, were required to register them at the office of the auditor of public accounts, which fact of registration he was required to certify upon each bond, under his seal of office.

When registered with the auditor, a certain amount of the State revenue, as specified in the act, was appropriated to the payment of the interest on the bonds for the period of ten years, thus relieving the tax-payers from that burden.

Much as we desire, in due regard to the law, to advance enterprises of this character, and to hold municipalities and other corporations to all their obligations, we are compelled to say, in this case, that appellees have shown no legal right to the writ they demand, and that there is no legal obligation on the town of Montmorency to make the subscription claimed and issue its bonds.

The judgment of the circuit court is reversed.

*Judgment reversed.*