State ex rel. v. Town of Westport.

THE STATE *ex rel.* BROWN, *Prosecuting Attorney, v.* THE TOWN OF WESTPORT, *et al.*

### Division Two, June 13, 1893.

1. **City**: SPECIAL CHARTER: ADOPTING GENERAL LAW: ELECTION. An election in a town incorporated under a special law to determine whether it will become a city of the fourth class under Revised Statutes 1889, sec. 977, is not rendered void by the fact that but one voting place for the entire town was designated by the ordinance calling for the election, instead of one in each ward of the town, there appearing no fraud or unfairness in the conduct of the election.

2. **Quo Warranto** : CITY CHARTER: LACHES. *Quo warranto* proceedings will not lie on the part of the state to deprive the city and its officers of their franchise because of irregularity in its organization, after the lapse of twelve years, and after repeated recognition of its corporate existence by the courts and the legislature during that time.

3. ———: ———: ———. The state will, in such case, be estopped on the ground of laches.

4. **City** : EXTENSION OF LIMITS: ELECTION. Under Revised Statutes, 1889, sec. 1580, which empowers the mayor and aldermen of a city of the fourth class, with the consent of a majority of the legal voters of the city voting at an election therefor, to extend the corporate limits over adjacent territory, it is immaterial whether the election is had before or after the passage of the ordinance extending the limits.

5. ———: ———: ———: RATIFICATION. The ratification of such ordinance by a majority of the voters at an election provided for therein is a substantial compliance with the statutes, and is sufficient.

6. ———: ———: ELECTION NOTICE: RETURN. Although the return of the city marshal of the giving of notice of an election for the extension of the city limits is defective, yet the casting of a large vote at such election, taken in connection with the defective return, authorizes the conclusion that notice was duly given.

7. ———: ———: ORDINANCE. The fact of the passage of the extension ordinance by the board of aldermen over the veto of the mayor and the announcement of the result by the president of the board, gave it the same validity and effect as if it had been approved by the mayor.

8. ——: ——: ——. The neglect of the mayor immediately after the election to publish his proclamation extending the city limits, as provided for by the ordinance, is immaterial, where by ordinance subsequently passed, the added territory is recognized as part of the the city.

9. ——: ——: HARMLESS IRREGULARITIES. Irregularities in proceedings to extend city limits, free from fraud and of an innocent character, will not invalidate the extension.

10. **Quo Warranto:** CORPORATE EXISTENCE OF CITY: PROSECUTING ATTORNEY. A proceeding by *quo warranto* to test the validity of the corporate existence of a city may be instituted by the prosecuting attorney as relator without leave of court.

## *Quo Warranto.*

WRIT OF OUSTER DENIED.

*Johnson & Lucas* and *R. H. Field* for relator.

(1) In order for a town to become a city of the fourth class, the first step to be taken required by the statute, is that the corporate authorities of the town shall elect to become a city of the fourth class by passing an ordinance or proposition to that effect. 1 Dillon on Municipal Corporations [4 Ed.], 270. The ordinance in this case merely called for the sentiments of the people on the subject of becoming a city of the fourth class and it therefore lacked the corporate action required by the statute. *Whitney v. City*, 58 Conn. 459; *Keely v. Kennard*, 60 N. H. 1; Dillon on Municipal Corporations, *supra.* (2) Such election, being void and unauthorized, cannot be held ratified by the council and mayor of the town of Westport thereafter assuming to act as "mayor and board of aldermen of the city of Westport," for a change of the form of corporate organization is not an ordinary municipal act of the body corporate, and is therefore not susceptible of ratification. *Stephens v. People, supra; Marsh v. Fulton Co.*, 10 Wall. (U. S.) 677; *Norton v. Shelby Co.*, 118 U. S. 451, 452. (3) The

four wards of Westport constituted four election districts and the election, being conducted only at one place in the town, was void. *Beane v. County Court*, 33 Mo. App. 635; *Fort Dodge, etc. v. Wahkansa*, 17 Iowa 85; *Dyson v. Pope*, 71 Ga. 205; *Marshall v. Kearns*, 2 Swan (Tenn.) 68. (4) The statutes of limitation are no bar to this *quo warranto* action, and in no event could they be construed as any bar in such actions when the usurpation complained of, as in this case, existed at the time of the filing of the information. *Parks v. State*, 7 Mo. 196; *U. S. v. Hoar*, 2 Mason C. C. 311; *State v. Pautuxet*, 8 R. I. 521. (5) Westport cannot obtain a corporate organization by the laches of the state officers. *Norton v. Shelby Co.*, 118 U. S. 451; *McPherson v. Foster Brothers*, 43 Ia. 61; *Brady v. Mayor*, 20 N. Y. 312; *Logan Co. v. Lincoln*, 81 Ill. 156. (6) The doctrine of estoppel is in its nature and application like that of ratification. An officer cannot ratify what he could not have authorized. *Delafield v. State*, 2 Hill (N. Y.) 160; *State v. Bank*, 45 Mo. 529; *St. Louis v. Gorman*, 29 Mo. 593; *Marsh v. Fulton Co.*, 10 Wall. (U. S.) 677; *Norton v. Shelby Co.*, 118 U. S. 451; *Saunders v. Hart*, 57 Tex. 8; *Day Co. v. State*, 68 Tex. 528. (6) The alleged extension of the limits of Westport is void, because, even if the city were one of the fourth class, the extension was made without the consent of the voters of Westport at an authorized election. (7) The extension ordinance was not based on the previous consent of the voters and is void. Revised Statutes 1889, sec. 1880; *Railroad v. Platte Co.*, 42 Mo. 175. (8) The burden of proof is upon defendants to prove that the notice required was given of this election, if any was given. The defendants having failed to produce evidence of the giving of such notice the presumption is that it was not given. *State v. McCann*, 88 Mo. 386; *State v. Sharp*, 27 Minn. 38;

State ex rel. v. Town of Westport.

,State v. Saxon, 25 Fla. 343; Kamp v. People, 30 N. E. Rep. 680; Carrico v. People, 123 Ills. 198; City v. Railroad, 79 Mo. 100. (9) The elections and vote thereat upon the subject of extending the limits of Westport are no less void because of the number of votes cast thereat. The rights of the minority and those in the territory sought to be attached in the new limits could not be wiped out at a void election. Force v. Batavia, 60 Ill. 104; State ex rel v. Brassfield, 67 Mo. 344. (10) Quo warranto is a proper remedy, not only to test the organization of a town, but the legality of an extension of limits made by the town under authority of legislative enactment also. People v. Oakland, 92 Cal. 611; Dillon on Municipal Corporations, sec. 272.

W. A. Alderson, W. C. Scarritt, Gage, Ladd & Small and James C. Rieger for respondents.

(1) Ordinance number 78, adopted by the mayor and council of Westport, May 10, 1881, is a full compliance with the requirements of section 987, Revised Statutes, 1889, which provides how towns may be incorporated in their respective classes. (2) Ordinance number 78 is not void by reason of the provision in section 2, which required the election to be held at the town hall of the town of Westport, although said town at that time was divided into four wards. (3) The act of voting by electors outside the election district is a mere irregularity, and the votes should be counted as cast. Peard v. State ex rel., 51 N. W. Rep. (Neb.) 828; Bell v. Faulkner, 19 S. W. Rep. (Tex.) 480; Davis v. State, 75 Tex. 420; Bowers v. Smith, 17 S. W. Rep. (Mo.) 761. (4) But if the proceedings of the mayor and board of aldermen, and the vote taken pursuant to ordinance number 78, is not a compliance

with the requirements of the general statutes of the state providing the method of changing the corporate existence of towns from one class to another, this court will not issue its writ of *quo warranto* disorganizing Westport as a city of the fourth class and ousting it of its jurisdiction as such city, after the uninterrupted and unquestioned exercise of the functions of such city for more than twelve years. *State v. Leatherman*, 38 Ark. 81; *State ex rel. v. Gordon*, 87 Ind. 171; *People ex rel. v. Bank*, 1 Doug. (Mich.) 282; *State ex rel. v. Baily*, 16 Ind. 452; *People ex rel. v. Maynard*, 15 Mich. 463. (5) This proceeding is not instituted under chapter 132, Revised Statutes, but is an attempt to invoke the reserved jurisdiction of this court, which it has under the constitution to issue writs of *quo warranto* and to hear and determine the same. Constitution, art. 6, sec. 3; Revised Statutes, chapter 132; *State ex rel. v. Lawrence*, 38 Mo. 535; *State ex rel. v. Stewart*, 32 Mo. 379. (6) The prosecuting officer, when authorized to institute and prosecute proceedings of this character, must exercise the official duty and discharge the official responsibility himself in fact and not in form—in good faith and not by mere pretense. He cannot permit the "proceedings to be used as mere instruments for the gratification of private malice, or the attainment of personal and selfish ends." The fact that this proceeding is so used is sufficient to cause its dismissal. *People ex rel. v. Railroad*, 88 Ill. 537; *Com. v. Burrill*, 7 Barr. 39. (7) No such ouster as is here asked will be granted unless it be shown that no serious detriment to the interests of the public or of individuals can result from it. *State ex rel. v. Tolan*, 33 N. J. Law, 196; *Atty. Genl. v. Page*, 38 Mich. 286; *Atty. Genl. v. Hanchett*, 42 Mich. 436; *King v. Parry*, 6 Ad. & El. 810; *King v. Stacy*, 1 Durn. & E. 1. See also cases cited elsewhere. (8) Public policy demands

that public interests are to be regarded and protected, and for this reason private prosecutions are not permitted. *State v. P. H. & T. Co.*, 1 Zab. 9; *Comrs. v. Bank*, 2 Grant's Cases, 392; *City v. People*, 80 Ill. 496. (9) The general rule that the respondent must show and prove his right in a *quo warranto* case is reversed, and the strongest possible presumptions are indulged that all things necessary have been rightly and properly done; and the case must be clear and strong to justify an ouster. *People v. Carpenter*, 24 N. Y. 86. (10) Proceedings will be rigorously scrutinized by the court to see that no rights of the public are prejudiced by its action. (11) Where the private relator is permitted by law to be heard, any slight proof of participation or acquiescence on his part in the proceedings attacked will defeat the action. *Jameson v. People*, 16 Ill. 256; *People v. Farnham*, 35 Ill. 562. (12) Every circumstance in the case and surrounding it and the prosecution of it, must be made known to the court, and closely and carefully scrutinized by it so that it is made clearly apparent that no serious public harm can possibly result from the judgment of ouster, or it will not be granted. *Chicago v. People*, 80 Ill. 496; *State ex rel. v. Stewart*, 32 Mo. 379; *State ex rel. v. Weatherby*, 45 Mo. 17.

BURGESS, J.—This is a proceeding in the nature of a *quo warranto*. The petition is in two counts. The first count charges that the city of Westport and the defendant aldermen are unlawfully exercising the functions of a city of the fourth class; that the town of Westport was incorporated under an act of the legislature passed in 1857 (see Acts of 1857, page 365), and that such town has not become a city of the fourth class in the manner provided by the statutes to accomplish that end. The second count of the information

or petition charges that the mayor and aldermen of said city, without the consent of the majority of the legal voters of Westport, passed an ordinance extending the limits of said city, and that the defendant aldermen are residents of the territory included in such new limits; and as one of the qualifications of an alderman is that he shall reside within the city, such aldermen are usurping and unlawfully executing the office of aldermen of such city.

The claim of the relator upon the first count is, that the proceeding by which the town of Westport attempted to change its corporate character from that defined by the act of the legislature of 1857 to that of a city of the fourth class under the general statutes of the state, is void, because: *First*, the proposition passed by the council of such town did not contain an express declaration of the intention of the counsel to change the limits of the town. *Second*, because the ordinance submitting the proposition to the people for their votes thereon, stated that such vote should be taken at the town hall, and did not provide that the people of each ward should vote in their respective wards on such proposition, the town then being divided into four wards.

The proposition relied upon by the relator in the second count is, that the limits of the city of Westport as extended by ordinance of 1891, is void, because such extension was made without the consent of a majority of the legal voters of such city, the contention of the relator being that the vote must be taken by the people before the passage of the ordinance, in order to comply with the language of the statute which gives the mayor and board of aldermen power to extend the corporate limits of the city with the consent of a majority of the legal voters of such city.

The law by which the town of Westport attempted to change from a town existing by virtue of the act of the legislature incorporating it, to a city of the fourth class, is found in section 977, Revised Statutes, 1889: "Any  *  *  *  town in this state, existing by virtue of  *  *  *  any local or special law, may elect to become a city of the class to which its population would entitle it under the provisions of this article, by passing  *  *  *  a proposition and submitting the same to the legal voters of such  *  *  *  town at an election to be held for that purpose, not less than twenty nor more than thirty days after the passage of such  *  *  *  proposition; and if a majority of such voters, voting at such election, shall ratify such  *  *  *  proposition, the mayor  *  *  *  of such  *  *  *  town shall issue his proclamation, declaring the result of such election, and thereafter such  *  *  .*  town shall, by virtue of such vote, be incorporated under the provisions of the general law provided for the government of the class to which such city belongs."

The petition prays judgment of ouster..

The town of Westport was duly incorporated by an act of the legislature in 1857. On the tenth day of May, 1881, there was passed by its council and approved by its mayor, the following ordinance, to-wit:

"Ordinance to submit to the legal voters of the town of Westport, Jackson county, Missouri, a proposition to become a city of the fourth class under the statute.

"Be it ordained by the mayor and council of the town of Westport: That the proposition to become a city of the fourth class as the same is classified and defined in article one (1) of chapter thirty-nine (39) of Revised Statutes of Missouri, shall be submitted to the legal voters of said town of Westport, at an election to be held for that purpose alone.

"Sec. 2. Said election shall be at the town hall of the town of Westport on the fourth day of June, 1881, at which every person entitled to vote under the charter and ordinance now in force shall be entitled to vote for the adoption or rejection of said proposition; and said election shall be conducted, and the returns thereof made, in all respects according to the ordinances or ordinance now in force regulating the election of mayor of said town of Westport.

"Sec. 3.    The ballots used at said election shall be in the following form: 'To become a city of the fourth class—Yes.    To become a city of the fourth class—No. And the voter will erase the clause he does not favor. If both clauses be erased, or if neither clause be erased, the ballot shall not be counted.'

"Sec. 4.    If, upon canvassing the votes, it is found that a majority of the legal voters voting at said election voted in favor of said proposition, the mayor shall immediately issue his proclamation, declaring the result of said election.

"Sec. 5.    This ordinance shall take effect and be in force from and after its passage."

It is claimed by the relator that before a town can become a city of the fourth class, the first step to be taken required by the statute is that the corporate authorities of the town shall elect to become a city of the fourth class by passing an ordinance to that effect, and that the mayor and council of the town of Westport never at any time elected to become a city of the fourth class in any ordinance or proposition passed by them.    In other words, that no decision was expressed by the council and mayor in the ordinance quoted to become a city of the fourth class:    That the ordinance in terms and by implication merely called for the sentiments of the people upon the subject of becoming a

city of the fourth class, and lacked the corporate action required by the statute.

Section 977 of Revised Statutes, *supra*, provides that any town in this state may elect to become a city of the class to which the population would entitle it by passing an ordinance or proposition and submitting the same to the legal voters of such city or town, at an election to be held for that purpose and if a majority of such voters, voting at such election, shall *ratify* such ordinance or proposition, the mayor or chief officer of such city or town shall issue his proclamation declaring the result of such election, and thereafter such city or town shall, by virtue of such vote, be incorporated under the provisions of the general law provided for the government of the class to which such city belongs. The first section of the ordinance now under consideration provides that the proposition to become a "city of the fourth class" shall be submitted to the legal voters of the town of Westport at an election to be held for that purpose on the fourth day of June, 1881.

In pursuance of this ordinance, an election was held at the town hall, and a majority of those voting voted in favor of the proposition, whereupon the mayor issued his proclamation, declaring Westport to be a city of the fourth class. At the time of the election there were four wards in the town of Westport and it is contended by counsel for relator that there were four separate election districts and that the law required each voter to vote in the ward in which he lived; and as there was but one place of voting designated by the ordinance, to-wit: the town hall, that therefore, the election as well as the ordinance was also void.

The mere fact of there being but one voting place, was at most an irregularity and did not make the election absolutely void. In the case of *Davis v. State*, 75 Tex. 424, where the evidence showed that the city

of "San Marcos" incorporated and divided into four wards; that but two election precincts had been established in the city by the commissioners, and that they were established without reference to the wards, and that they included parts of the surrounding county, it was held that when the place of voting had been fixed, and the election had been held, it ought not to be set aside because they have failed to make each ward of a city an election precinct, unless it be shown that the election was fraudulent. *Bell v. Faulkner*, 19 S. W. Rep. 480; *Peard v. State, ex rel.*, 51 N. W. Rep. 828.

There is no claim or pretense that there was any fraud or unfairness connected with the promulgation of the ordinance or in the election thereunder, but everything seems to have been conducted with the utmost good faith and fairness. But conceding both the ordinance and the election thereunder to be invalid, can they be called in question at this day and time, and the defendant ousted; the city of Westport as a city of the fourth class ousted of its jurisdiction as such city, after the uninterrupted and unquestioned exercise of the prerogatives of such city for more than twelve years? The defendant city of Westport is one of the rapidly growing cities of the state; has expended large sums of money in constructing streets and boulevards, and beautifying it in a manner befitting a prosperous people, which has occasioned large and heavy expense, and made it necessary to issue tax bills to contractors in payment therefor, against property holders within its corporate limits. It has been recognized by the public, and by the judicial tribunals of this state from time to time, as a city of the fourth class. In the case of *Westport v. Kansas City*, 103 Mo. 141, Judge BLACK in speaking for the court says: "The city of Westport, which is a city of the fourth class." In the

case of *State ex rel. v. McMillan*, 108 Mo. 153, and *Morse v. Westport* 110 Mo. 502, and *Warren v. The Barber Asphalt Paving Company*, 115 Mo. 572; the defendant city was recognized as a city of the fourth class by this court. It was held by the supreme court of Arkansas in the case of the *State v. Leatherman*, 38 Ark. 81, which was a proceeding by the attorney general by *quo warranto*, that the state may by long acquiescence and continued recognition of a municipal corporation, through her officers, state and county, be precluded from an information to deprive it of franchises long exercised in accordance with the general law.

So it has been held that after a use of corporate franchises for fifteen years, *quo warranto*, against the persons acting as a corporation will not be entertained, and that such a provision may be limited in particular cases to a shorter period, when requiring a longer time would be unreasonable or unconscionable on account of the laches on the part of the relator. *State ex rel. v. Gordon*, 87 Ind. 171. So it was held in the case of *People v. Maynard*, 15 Mich. 463, that where townships had been organized under a statute and had acted for many years, and had been recognized by the various state and local authorities, it was too late to inquire into the validity of the law providing for their original creation, and their corporate existence cannot be questioned.

In the case of *Jameson v. People ex rel.*, 16 Ills. 257, which was a proceeding by *quo warranto* to enquire into the organization of the town of Oquawka, instituted four years after the town was incorporated, the legislature had enacted laws concerning the town and the public had recognized it as a municipal corporation. SKINNER, J., in delivering the opinion of the court says:

"These acts, recognizing the existence of the corporation, and empowering it to act as a body corporate in issuing and negotiating obligations of the town, and upon the faith of which, individuals may have invested their money, preclude inquiry into the question of the original legal organization of the town, and are conclusive upon the question of the existence of the corporation.    *    *    *    Were we to hold, after this acquiescence of the public, and these recognitions of the legislature, that the town remains unincorporated on account of some defect in its original organization as a corporation, what confidence could individuals have in the validity of securities emanating from these local authorities?  Municipal corporations are created for the public good, are demanded by the wants of the community; and the law, after long continued use of corporate powers, and the public acquiescence, will indulge in presumptions in favor of their legal existence. *    *    *    The law will incline to sustain rather than to defeat them.    It would seem incompatible with good faith and against public policy, although irregularities may have intervened in the organization of the town, not to hold, that it is not a body corporate; and we do not think the law requires us to do so."    This case was followed and approved in the case of *People ex rel. v. Farnham*, 35 Ill. 562.  See also *People v. Maynard*, 15 Mich, 463; *Attorney Geneneal v. Page*, 38 Mich. 286; *Attorney General v. Hanchett*, 42 Mich. 436; *Attorney General v. Detroit*, 5 American and English Corporation Cases, 497; *Attorney General ex rel. v. Detroit*, 26 Mich. 263; *State ex rel. v. Bailey*, 19 Ind. 454.

But it is contended by counsel for relator that a large majority of the cases which announce this rule are prosecutions at the instance of and in the interest of some private individual.  Grant it for the sake of argument that such be the case, we think the rule

announced in *State v. Leatherman*, 38 Ark. *supra*, which we most heartily endorse, and cases announcing the doctrine laid down therein, more in accord with the spirit of the times and the advancements of the age. Towns and cities now spring up like magic as it were, and in a short time assume all the privileges and franchises pertaining to and incident to such municipalities, at the same time assuming the burdens of taxation for their improvement and advancement. Before the court should grant the writ in this case, it should scrutinize very closely all the proceedings, and be fully satisfied that an apparently clear case is made out against the organization of the city, and the extension of its limits, as the result of the action it may take in the case, if against the city, or the extension of its limits, must prejudicially affect the rights and interests of the state as well as creditors of the city.

We do not think that this proceeding comes within the statute of limitations, nor are we disposed to place the result of our deliberations strictly on the ground of estoppel, but rather because of laches on the part of the state. If there is to be no limit to such proceeding and if at any period of time, however remote from the time of the organization of a municipality, a proceeding by *quo warranto* can be resorted to, and such municipality and its officers ousted of their franchises, because of irregularity in its organization, it would effectually destroy the credit of municipalities generally, to such an extent as to render it impossible to grade and improve their streets, or to construct any kind of improvements promotive of the health, welfare and convenience of their inhabitants, and issue bonds or tax bills in payment thereof. People would be unwilling to labor for such cities, and capitalists to invest in their bonds, for fear of their disorganization. Such a doctrine might disrupt and disorganize many of the

best and most prosperous cities in this state, and we think the promulgation of such a rule would be against public policy and the best interests of the inhabitants and property holders in such municipalities.

We come now to the consideration of the question of the extension of the limits of the city of Westport as provided by ordinance of date April 14, 1891. The only statutory provisions mentioning or in anywise conferring the power to extend the corporate limits of a city of the fourth class are found to be contained in section 1580, Revised Statutes, 1889, which reads as follows:

"Sec. 1580.   *   *   *   The jurisdiction of any city which shall organize under the provisions of this article shall not in anywise be affected or changed in consequence of such reorganization, but the limits, wards and boundaries of such city shall remain after such change of organization the same as at the time of such reorganization; and all laws or parts of laws or ordinances not inconsistent with this article, which were in operation in such city prior to its reorganization, shall continue to be in full force until repealed. The mayor and board of aldermen of such city, whether the same shall have been incorporated before becoming a city of the fourth class or not, with the consent of a majority of the legal voters of such city, voting at an election therefor, shall have power to extend the corporate limits thereof over any territory lying adjacent thereto, or may, by the same vote, reduce the territory of such city to exclude land used for farming purposes. All agricultural or pastoral lands included within the corporate limits of such city, shall be exempt from taxation for city purposes until they have, by recorded plats or sale, been reduced to tracts or lots of five acres or less. Such election shall be held in accordance with the general election law of the state, and the same shall

be held upon such notice and at such time and place,
and judges and clerks of the same shall be appointed
and make their returns of the same in such manner as
may be prescribed by ordinance of such city."

The ordinance extending the city limits and pro-
viding the manner of holding the election, time thereof,
places of voting and form of ballots to be used, etc., is
as follows:

### No. 84.

"An ordinance to extend the corporate limits of the
city of Westport over territory lying adjacent thereto.

"Be it ordained by the board of aldermen of the
city of Westport, as follows:

"Section 1. Extension of limits.—Description of.—
The corporate limits of the city of Wesport shall be
and are hereby extended so as to include the territory
lying adjacent thereto, and within the boundary
lines hereinafter described, which boundary lines
shall constitute and be the established limits of the
territory of said city, and said boundary lines are and
shall be as follows:

"Beginning on the west boundary line of the state
of Missouri at the point of intersection with the east and
west center line of section eighteen (18), township
forty-nine (49) north, range thirty-three (33) west of
fifth principal meridian, in Jackson county, Missouri;
running thence south on and along the western
boundary line of said state of Missouri, to a point one
hundred and eighty (180) feet south of the north line
of section thirty (30), same township and range; thence
east and parallel with the north line of said section
thirty (30), to a point one hundred and eighty (180)
west of the north and south center line of said section
thirty (30); thence south and parallel with the north
and south center line of said section thirty (30), to a

point one hundred and eighty (180) feet south of the east and west center line of said section thirty (30); thence east and parallel with the east and west center line of sections thirty (30) and twenty-nine (29) in same township and range, to a point one hundred and eighty (180) feet due south of the southeast corner of the west half of the southwest quarter of the northeast quarter of said section twenty-nine (29); thence north and parallel with the north and south center line of sections twenty-nine (29), twenty (20) and seventeen (17), in same township and range, to the east and west center line of said section seventeen (17); thence west on and along the east and west center line of said sections seventeen (17) and eighteen (18) (the same being the south boundary line of Kansas City, Missouri), to the point of beginning.

"Section 2. Election.—Time of.—An election shall be held in the city of Westport on Monday, the eleventh day of May, 1891, for the purpose of voting upon the proposition to extend the corporate limits of said city of Westport, and to establish the boundary lines thereof, as herein provided; at which election said proposition shall be submitted to the qualified voters of said city of Westport for their decision.

"Section 3. Election.—Notice of.—Notice of the election provided for in this ordinance shall be given by publication of this ordinance in the Kansas City *Star*, a newspaper published in Kansas City, Missouri, and having a large circulation in the city of Westport, for at least three consecutive weeks before the time provided herein for the holding of said election, and also, by the posting up at at least twenty places in the city of Westport printed copies of this ordinance, at least twenty days before the day of holding said election. And the city clerk is charged with the duty of attending to the giving of notice as herein provided.

"Sec. 4.   Judges and Clerks.—Appointment of.— There shall be four judges and four clerks at each voting place or precinct, and they shall be selected and appointed by the board of aldermen. Should any judge or clerk fail to appear and qualify, or should there be a vacancy in the number of judges and clerks for any reason, the by-standers, who are qualified voters, may select some one to fill such vacancy.

"Sec. 5.   Precinct.—Voting Places.—For the purpose of the election herein provided for, the first ward shall be and constitute the first voting precinct; and the second ward shall be and constitute the second voting precinct; and the persons voting at such election shall vote at the voting place in the precinct in which they reside.   The voting place in the first ward or precinct shall be at the room where the board of aldermen meet, being the city hall, at the southeast corner of Cross-Main and High streets; and the voting place in the second ward or precinct shall be at Barrett's feed store, on the north side of Main street, between Cross-Main and Mill streets, all in said city of Westport.

"Sec. 6.   Returns of Election.—Casting up Result. —Report and Record of.—After the closing of the polls, the counting of the ballots, and the final signing and attesting of the poll-books, the ballots, ballot boxes and poll books shall be returned and delivered by the judges and clerks of each precinct to the city clerk, who shall receive and care for the same; and within five days after such return and delivery to the city clerk, the mayor, city clerk and the police judge shall examine and cast up the votes given upon the proposition of changing the limits of the city as herein provided, and shall report the result thereof to the board of aldermen without delay; and such report shall be entered on the record of the board of aldermen.

"Sec. 8. The Time of Effect of this Ordinance.—This ordinance shall take effect and be in force from and after its approval.

"Approved this fourteenth day or April, 1891.

"JAS. C. RIEGER,

"Mayor and ex-officio president of the board of aldermen."

In pursuance of said ordinance said election was advertised and was held as provided therein, on the eleventh day of May, 1891, at which two hundred and fifty-one votes were cast on said proposition to extend, and only twenty-eight voting against it. The result of which election was reported by the board of aldermen as provided in said ordinance, and entered upon the records of the board, and is as follows:

"Council Chamber,

    "City of Westport, Mo.

                        "May 12, 1891.

"To the Honorable Board of Aldermen of the City of Westport, Mo.

"Gentlemen: ,

"We the undersigned officials of the city of Westport, Mo., have this twelfth day of May, 1891, examined and cast up the votes cast upon the proposition of extending the limits of said city in pursuance of ordinance No. 84, entitled: 'An ordinance to extend the corporate limits of the city of Westport over territory lying adjacent thereto,' approved April 14, 1891; and we do report and certify that we find the total number of votes cast at said special election, held May 11, 1891, upon said proposition is two hundred and fifty-two; and that the total number of votes cast in favor of said proposition is two hundred and twenty-three; and that the total number of votes cast against said proposition is twenty-eight; and that the majority of all the votes cast at said election and upon said proposition, is two

hundred and twenty-three in favor of said proposition of extending the limits of said city, as provided by said ordinance, and that one ballot cast was not counted, because being insufficient.

"G. L. Love, *City Clerk.*
"James Hunter, *Police Judge.*
"Jas. C. Rieger, *Mayor.*"

Afterwards, to-wit: in the month of June, 1891, the said city, including the newly added territory, was re-districted and made into four wards. Two of said wards, to-wit: the third and fourth, being wholly within the newly added territory. An election for aldermen to fill vacancies therein was duly held, and two aldermen elected from each of said wards to represent the people within those new wards in the board of aldermen, and in administering the affairs of the city.

At the regular city election held in said city on the fifth day of April, 1892, the defendants, Thompson, Dornsief, McMillan and Tate, were duly elected aldermen from wards in said new territory and were duly commissioned and qualified as such.

It is contended by counsel for relator that the election to extend the limits of the city should have taken place before the ordinance extending the limits was passed by the board of aldermen, and as the ordinance was passed first, that therefore both the ordinance and the election were without authority of law and of no force or effect. The statute provides that the mayor and board of aldermen of such city, with the consent of a majority of the legal voters of such city voting at such election, shall have power to extend the corporate limits, but does not say when such consent shall be had, whether before or after the passage of the ordinance.

If the law required that before the passage of such ordinance a majority of the legal voters of such city

voting at an election held for that purpose should vote in favor thereof, then relator's position would be correct, but it makes no such provision, and taking the vote after the passage of the ordinance, was in conformity with the statute. Here the ordinance sets out in full the proposition to be voted upon, including a minute description of the territory over which the city limits were to be extended, and in every material particular complied substantially with the statute so that the voters might intelligibly vote thereon. The object of holding an election was for the purpose of ascertaining the will of the people who were entitled to vote at such election, and it makes no difference when this was done, so that the ordinance was bottomed on the result of such election, and a majority vote being cast in favor of the extension.

The cases of *Railroad v. County Court,* 42 Mo. 175; *Carpenter v. Inhabitants,* 51 Mo. 496; *People v. Waynesville,* 88 Ills. 469; *Force v. Batavia,* 61 Ills. 99; *McWhorter v. The People, ex rel.,* 65 Ill. 290; *State ex rel. v. Brassfield,* 67 Mo. 344, and cases of like kind cited by relator, where the question involved was the authority of corporations, or *quasi* corporations to subscribe stock and issue bonds in payment thereof to railroad corporations, present a very different question from the one under consideration, from the fact that in such cases, after the vote shall have been taken favoring such a proposition, much remains to be done in the way of executing instruments, creating pecuniary obligations, while in the case in hand the object of the election was attained in the passage of the ordinance and its ratification by a vote of the people; nothing remained to be done.

On March 7, 1891, the mayor and aldermen of the city of Westport passed an ordinance numbered 79, extending the limits of the city, which is in effect like

84, about the only difference being as to the paper in which the notice of the election was required to be given, the time of holding the election and the territory which was proposed to be included in the ordinance extending the limits. This ordinance provided for the publication of the notice of the election in the Kansas City *Daily Times* for four consecutive weeks, next preceeding the date of the election, and for posting for a like period, twenty printed copies of said ordinance in twenty public places in the city of Westport. It was vetoed by the mayor, and subsequently passed over his head by unanimous vote of the aldermen. In the description of the territory there was a mistake, in consequence of which another ordinance, number 84, was subsequently passed, and another election held, number 79 as to the extension being abandoned.

While the last named ordinance and the election held under the same are not relied on by defendants as to the matter of extension, relator insists that the election held thereunder was void because of the want of proof of the notice of the election, and that the burden of proof in this regard devolved upon the defendants. The city records show the following entry: "March 12, 1891: Marshal also files his certificate of posting extension ordinance notices as required." This record is obnoxious to the objection that it stated a mere conclusion, instead of the facts as to how and when the notices were posted, but when taken in connection with the fact that there were cast at this election, as shown by the evidence, 327 votes for mayor, we conclude that the evidence is sufficient to establish the fact that notice was duly given.

The fact that the mayor failed and refused to approve this ordinance did not render it invalid, and when passed over his head by the aldermen and the result announced by the president of the board of

aldermen, it had the same force and effect as if approved by the mayor. The power to approve necessarily follows in this case the power to pass. If there should be any doubt in regard to the validity of ordinance No. 84, because of the failure of the mayor to issue immediately after the election his proclamation extending the city limits, according to the provisions of said ordinance, such doubt was removed by the action of the board of aldermen when on the twenty-second day of June, 1891, they passed an ordinance No. 137, dividing the city into four wards and defining their respective boundaries. This ordinance was approved by the mayor, and while expressly dividing the city into wards, its effect was to extend the city limits according to ordinance No. 84. While as a general rule the acts of municipal corporations should be strictly construed, yet this rule should not be unjustly and severely adhered to, when there has been no fraud, or undue advantage taken, and where the effect of strict construction would be to wipe out of existence one-half or more of the towns and cities in the state.

Section 1585, Revised Statutes 1889, provides that the board of aldermen may, by ordinance, divide the city into not less than two wards, and two aldermen shall be elected from each ward by the qualified voters thereof.

There are many irregularities referred to and argued by counsel for relator in their brief, to which we have not adverted for the reason that in our opinion they are of an innocent character, free from fraud, and could not possibly change the result.

That many enormous and burdensome tax bills have been issued by the city authorities against adjacent property owners for grading, paving and repairing streets and boulevards within the city limits, is manifest from the evidence in this case, but that affords no legal

ground why the city should be ousted of her franchises, or her co-defendants of the offices to which they seem to have been fairly elected.

As this proceeding may be prosecuted in the name of and at the relation of Marcey K. Brown, prosecuting attorney for Jackson county, without leave, it is unnecessary for this court to decide whether or not the name of R. F. Walker, attorney-general for the state, may be substituted for his. *State ex. rel v. Rose*, 84 Mo. 198; *State ex rel v. McMillan*, 108 Mo. 153. Therefore leave to substitute the name of Walker, attorney general, for that of Brown, prosecuting attorney for Jackson county, will be denied. Writ denied. All concur.