THE STATE ex rel. JOHN H. BERKSHIRE and BEN H. BERKSHIRE, Co-Partners as Berkshire Lumber CO., v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals.

In Banc, April 30, 1921.

1. **CERTIORARI TO COURT OF APPEALS: Function of Writ: Discretion to Grant.** The writ of *certiorari* from the Supreme Court to review a decision of a Court of Appeals on the ground of conflict of opinions performs a double function, viz: (1) to prevent contrariety of opinions upon questions of law and equity in this State; and (2) if sustained, to quash an adverse judgment against the applicant for the writ. The issuance of the writ, however, is discretionary with the Supreme Court.

2. ———: **Must Apply Within Reasonable Time.** Neither the statutes of the State nor the rules of the Supreme Court fix the time limit for applications for writ of *certiorari* to review decisions by the Court of Appeals; but such applications must be made within a reasonable time after the decision of the Court of Appeals become final.

3. ———: ———: **What is Reasonable Time.** Inasmuch as under Section 1520, Revised Statutes 1919, and Section 15 of Article 6 of the Constitution, the Clerk of the Court of Appeals must certify to the circuit court a copy of the opinion of the Court of Appeals within thirty days after the filing of such opinion, which is construed to mean the day upon which a motion for rehearing, if one is filed, is overruled, the application for the writ of *certiorari* should in ordinary cases, be made within such thirty days.

State ex rel. Berkshire v. Ellison.

4. ———: ———: ———: **Laches.** Where application for a writ of *certiorari* to review a decision of a Court of Appeals on the ground ·of conflict with controlling decisions of the Supreme Court was not made until more than nine months after the motion for rehearing was overruled and more than seven months after the opinion of the Court of Appeals had been certified to the circuit court and judgment entered there pursuant to such opinion, and the applicant for the writ had not applied to the Court of Appeals for a stay of mandate to enable him to apply for the writ of *certiorari*, there was such delay and laches on the part of the applicant as to require the writ to be quashed.

5. ———: ———: ———: **Excuse.** The applicant having taken no action in the Court of Appeals to secure a stay of mandate until application could be made for the writ, it is no excuse that applicant, four months after the mandate had gone down to the circuit court and judgment pursuant thereto had been entered by that court, applied to the Supreme Court for a mandamus to the Court of Appeals to so write its opinion as to state the facts, as a preliminary step toward applying for the writ of *certiorari*, which application for a mandamus was denied three months before the application for the writ of *certiorari* was made.

## *Certiorari.*

WRIT QUASHED.

*Edgar C. Ellis, Hale H. Cook, Roy H. Dietrich* and *Ellis, Cook & Dietrich* for relators.

There was no delay by relators to work a denial of the writ herein. (a) Taking up the point referred to in the paragraph, that the mandate had been delivered to the circuit court and judgment rendered as directed therein, and which respondents claim as a reason for the denying of this writ, certainly nothing was done in the circuit court in making a clerical entry under the judgment and mandate of the Court of Appeals which should be appealable or which in any way changed the status of the parties. The rights of the parties were fixed, if at all, by the judgment in the Court of Appeals. When the motions for rehearing and to certify the cause to the Supreme Court were overruled, there was nothing further to be done except by appeal-

ing to the superintending control of the Supreme Court after the respondents herein had exceeded their jurisdiction. Orvis v. Elliott, 147 Mo. 231. (b) This court has heretofore held that the fact that the mandate had come down before the application for the extraordinary, writ was made was immaterial and was not laches. State ex rel. v. Smith, 172 Mo. 629, 630. (c) Also as a matter of actual practice, these respondents know from their own experience that the writ of *certiorari* may and does issue and that thereafter the record in said Appellate Court be quashed, although the mandate has been sent down. This was true in the case recently decided of State ex· rel. Development Co. v. Ellison, 222 S. W. 783, in which the Supreme Court granted the preliminary writ of *certiorari* and thereafter quashed the record. The mandate in that case had been sent down to the circuit court, and, in fact, execution had been issued thereunder. (d) As to the further claim of laches as advanced by the respondents, immediately following the overruling of the motion for rehearing and failing that to transfer to this court, in November, 1919, motion was filed by way of notice with the respondents to withhold issuance of mandate because lien claimants, including the relators, purposed to apply to this court for writ of *certiorari*. Thereafter the lien claimants applied to Supreme Court for writ of mandamus as shown by the files of the Supreme Court raising and urging the point that respondents herein had failed properly, adequately and legally to state in their opinion the essential facts as presented by the record. The court denied the application for the writ of mandamus and your relators then lodged their application for writ of *certiorari*. This is called to the court's attention for the reason that due notice was given and there is no claim that the rights of any parties intervened. The property still stands in the hands of the defendants and no one is shown to have suffered except the relators and the other lien claimants who have made possible by their material and labor the Holckers' home and who are still without pay for same.

*Scarritt, Jones, Seddon & North* for respondents.

This writ should be denied by reason of the delay of relators. (a) This court has, in no uncertain terms, stamped its disapproval upon the laches of parties in seeking discretionary writs in this court. State ex rel. v. Gibson, 187 Mo. 555. (b) Likewise, it has been established by the decisions of this court that after a trial has been had in the circuit court and a new trial granted and a second trial had, a party litigant will not be permitted to go back of the last trial and question the action of the court in setting aside the first verdict and granting a new trial. Davis v. Davis, 8 Mo. 56; Ess v. Griffith, 128 Mo. 50; Samuel v. Morton, 8 Mo. 633, 635; Trundle v. Ins. Co., 54 Mo. App. 188.

GRAVES, J.—*Certiorari* to the Kansas City Court of Appeals. The proceeding *nisi* out of which the present proceeding grows was that of a copartnership under the name of Berkshire Lumber Company v. Ima H. Holcker, Otto L. Holcker, et al. It was an action under the equitable mechanics lien law, Act of 1911, p. 314. The Berkshire Lumber Company being desirous of enforcing a lien against property in Kansas City which belonged to Mrs. Ima H. Holcker, brought action against her and her husband (Otto) and all other lien claimants. In the trial court the verdict of the jury favored Mrs. Holcker, in that it found that her husband was not her agent in putting the improvements upon the property. The law requires, under given conditions, the submission of issues to the jury and bound the trial court by their verdict on such issues.

The circuit court granted the lien claimants a new trial, and Mrs. Holcker took an appeal from said order to the Kansas City Court of Appeals. In that court there were two hearings. January 17, 1917, there was an opinion by Judge Ellison, reversing and remanding the cause with directions to the circuit court "to reinstate the verdict and enter judgment against the liens."

The case was then held up in the Kansas City Court of Appeals to await the decision of this court in Boeckler

Lumber Company v. Wahlbrink, which had been certified to this court by the St. Louis Court of Appeals, 191 Mo. App. 334.

After our ruling in that case, the instant case was set down for re-argument in the Kansas City Court of Appeals. June 17, 1919, the Kansas City Court of Appeals rendered, through TRIMBLE, J., a second opinion, in the lower court by which the order was again reversed, with directions to reinstate the verdict of the jury and enter judgment against the lien claimants. November 10, 1919, the motion for re-hearing was overruled. November 10, 1919, a motion was filed by some of the lien claimants to withhold mandate, but this record does not show the action of the Kansas City Court of Appeals thereon. Relators here were not parties to this application. The application for our writ of *certiorari* was filed here on August 6, 1920.

Counsel for the respondents here, have filed in this court a certified copy of a judgment in the Circuit Court of Jackson County entered on the 30th day of December, 1919, by which it appears that on such date said circuit court entered up a judgment in accordance with the directions of the Kansas City Court of Appeals. It is charged in respondents' brief that the term has elapsed, and that judgment was not appealed from by any of the lien claimants. We judicially know that the term had elapsed, and further that no appeal can be taken from a judgment in a circuit court which has been entered by the express direction of an appellate court. This states the case for the single point, which we deem settles what our judgment here should be, on the record before us.

I.   The writ of *certiorari*, such as we have in this case, has one particular function, and that is to prevent contrariety of opinions upon question of law and equity in this State. Of course. the party who applies for our writ as against the judgment of a court of Appeals has the further interest of having an adverse judgment quashed. So as to the applicant for our writ, if he is successful in the case, a double purpose has been subserved; (1) contrariety of opinions has been thwarted, and (2) the adverse judgment as to him

Discretionary.
Certiorari:
Functions

has been quashed. But what ever the result of our superintending control of the appellate courts may be by our writ of *certiorari*, it is with this court a purely discretionary writ. The great number of applications refused, and the few granted, by this court, bespeak the discretionary character of this writ in this court. The books bespeak the further fact, that when upon a full hearing, we conclude that our writ was improvidently granted, we have always promptly quashed the same. So we need not seek further authority for the fact, that with this court, this character of a writ of *certiorari*, is purely discretionary. Our whole course of action so shows.

II. In this case however we have a new situation urged for the quashing of our writ. It is urged that the application was not timely made; that relators were guilty of laches in not acting sooner. We think that there is substance in this contention. The application was made more than a year after the opinion of the Court of Appeals was written and handed down, and more than nine months after the court had overruled the motion for rehearing. Of course the opinion was not a finality until the motion for rehearing was overruled. Pending such motion the whole matter was in the breast of the court, but when it was overruled, the opinion was a finality, so far as the Court of Appeals was concerned, unless the court, at the same term, of its own motion, changed its opinion and judgment. Such was not done in this case. The relator here waited nine months from the time the motion for rehearing was overruled. Not only so, but it waited until after the law directs that the Court of Appeals mandate should go down, and until after such mandate had no fact gone down, and the circuit court acting thereon, entered up the judgment directed by the Court of Appeals. In other words in this particular case the judgment of the Court of Appeals had been fully executed, some seven months before there was an application here to have that judgment reviewed and quashed through our writ of *certiorari*. Was such application timely under these facts? We think not, and for reasons which follow.

*Time of Application.*

III.   Neither our statutes nor the rules of our court fix the time limit for applications for writs of *certiorari.* The question is one of first impression in this court, and one to be determined by reason, rather than authority. State laws, limiting and enlarging, the old common-law writ of *certiorari* are so divergent and variant, that their cases furnish but little light.   It is clear that the aggrieved party should be granted by the Appellate Court,

Laches.    if notice is given of a desire to apply for our writ of *certiorari,* a reasonable time to make such application, and procure our ruling thereon.   This the appellate courts of this State have always done so far as we have been able to learn.   Nor is it shown in this case that the Kansas City Court of Appeals failed to give this applicant a reasonable time upon his application.   In fact this relator made no suggestion to the Kansas City Court of Appeals about its desire to apply for a writ of *certiorari.* The record before us shows that Waterson Brothers, another lien claimant, on November 20, 1919, filed an application for stay of mandate until they could make application, and in their application it is suggested that they were informed and believed that Berkshire Lumber Company contemplated a like application for our writ.   The record is silent as to what ever became of Waterson Bros. application to stay mandate, and singularly silent as to when the court's mandate went down to the circuit court. From the certified judgment of the circuit court we know that the mandate was there on December 30, 1919, the day upon which the circuit court fully executed the judgment of the Court of Appeals.   Thus it will be seen that the relator in the instant case sat idly by from November 10th to December 30th, without application to this court, and permitted the judgment of the Court of Appeals to be fully executed by and through their non-action.   The present relator did not act within a reasonable time, and so far as this record shows, the Kansas City Court of Appeals did not refuse to give any of the aggrieved parties a   reasonable time in which to take their action in this court.   The filing of their application and the granting

State ex rel. Berkshire v. Ellison.

of out writ thereon, would have stayed all further proceedings in the Court of Appeals. In fact in prohibition cases we have ruled that the filing of the application, and notice thereof to the circuit judge suffices to stay his hand. [State ex rel. v. Board of Trustees, 186 S. W. l. c. 681.] Same rule should apply in *certiorari.*

In the reply brief of relator it is urged as an excuse for the delay that they brought in this court an action in mandamus to compel the Court of Appeals to so write their opinion as to state the facts, as a preliminary step toward filing the present action. We are asked to examine our record as to this, or rather to judicially know this fact. Whether proper or improper, we have examined our records, and the application for mandamus was not filed until April 17, 1920, and was refused by us on April 30, 1920. So that it appears that no steps were taken by relator until long after the circuit court had entered up its judgment in accordance with the directions of the Court of Appeals.

Under such circumstances after most serious consideration, we are forced to two conclusions (1) that the laches of the relator should require us to quash our writ, and (2) that where the Court of Appeals has, upon request of an aggrieved party, stayed its mandate for a reasonable time to allow such party to apply to this court for a writ of *certiorari,* and after the expiration of such reasonable time, and no action has been taken by the aggrieved party, then their mandate should go down. And further, if thereafter, the judgment of the Court of Appeals sought to be quashed has been fully executed, our writ should not go, and if it has gone, it should be quashed. The question of a reasonable time we take next.

IV. We have but little to guide us in determining a reasonable time. The Court of Appeals, so far as we have been able to judge, have exercised a reasonable discretion in the staying of their mandates, in order to allow applications to be made to this court for writs of *certiorari.* Such courts

*Reasonable Time.*

have likewise continued their stay without suggestion from this court, until this court has passed upon the application. This is all that aggrieved parties should want, and all to which they are entitled.

Section 1520, Revised Statutes 1919, requires the clerk of this court to certify a copy of the opinion to the circuit court within thirty days after it has been filed. The statute says that he "shall" so certify it within the thirty days. We construe our filing of the opinion for the purpose of this statute to be the day upon which we overruled the motion for rehearing. This because motions for rehearing might pend more than thirty days, and if not thus construed we might have the clerk certifying out our opinion and mandate, with a motion for rehearing pending, which motion might thereafter be sustained. When so ruled we have a period of thirty days between the overruling of the motion, and the day upon which the clerk shall certify out the opinion. By Sec. 15, Article VI of the Constitution the foregoing statute is made applicable to the Courts of Appeals. Having due regard to this statutory provision, we conclude that these thirty days should be the limit of reasonable time for aggrieved parties in the Courts of Appeals to get their application to this court. Of course Courts of Appeals, like this court, have control over their mandates and other process, and could grant a longer stay, if the necessities of the case required, and this court might be governed by extreme circumstances to hold a longer time to be within reason, yet it occurs to us that in the usual run of these *certiorari* cases this thirty day period, is a reasonable time, and in many cases more than reasonable time within which to apply to the Court of Appeals for a stay of mandate, and get their application for our writ duly served and filed here. The application to the Court of Appeals for stay of mandate should shortly follow the overruling of the motion for rehearing.

Under all the facts in this case, our writ heretofore granted, for the reasons aforesaid, should be quashed,

and it is so ordered. All concur; *Woodson J.*, in result, for the reasons which were expressed in the decision in Boeckler Lumber Co. v. Wahlbrink, when that case reached this court from St. Louis Court of Appeals.