THE STATE ex rel. KATHERINE KENNEDY v GRANVILLE HOGAN, Judge of Circuit Court.

Division One, January 5, 1925.

1. **NAMES OF PARTIES: Misspelled in Title: Divorce: Cured by Statute.** Where a defendant is misnamed in the petition and is personally served with process and appears in some stage of the proceeding, the misnomer is cured by the Statute of Jeofails (Sec. 1550, R. S. 1919), providing that no judgment, upon failure to answer, shall be reversed, impaired, or in any way affected by reason of "any mistake in the name of a party or person when the correct name shall have been once rightly alleged in any of the pleadings or proceedings." So that where, in the action of divorce, brought by a husband, whose name was James Kennedy, against his wife, whose name was Katherine Kennedy, the cause was entitled "James Kennesdy vs. Kathrine Kennesdy," in a petition verified by affidavit signed "James Kennedy, plaintiff," and a writ was issued commanding the sheriff to summon "Kathrine Kennesdy" to answer the petition of "James Kennesdy," and his return showed that he executed the writ by delivering a copy of the

State ex rel. Kennedy v. Hogan.

writ and petition to "Katherine Kennedy," and thereafter, by an order duly entered of record, a cause entitled "James Kennedy vs. Katherine Kennedy" was duly assigned to the proper division of the court, and thereafter in said division in a cause entitled "James Kennesay vs. Kathrine Kennesay" the default of defendant was noted of record, and afterwards in a cause entitled "James Kennesdy vs. Kennesdy" judgment was entered for plaintiff, and Katherine Kennedy thereafter appeared and in a cause entitled "James Kennedy vs. Katherine Kennedy" filed her personally-signed motion, alleging that she had been personally served with a copy of said petition and praying that said judgment be set aside, the motion cannot be sustained on the ground of the mistakes in the names, for not only was the petition verified by "James Kennedy, plaintiff" and a certified copy delivered to "Katherine Kennedy," but at least two of the record entries bear the correct caption of "James Kennedy vs. Katherine Kennedy."

2. **CERTIORARI: Laches: Divorce: Judgment by Default: Jurisdiction: Residence One Year Next before Suit.** Where a reversal of a judgment rendered by an inferior court is calculated to derange the interest of society, or to demoralize family relations entered into on the faith of such judgment, a party challenging the validity of the judgment is required to use diligence in applying for the writ of *certiorari*, and any unreasonable delay will warrant a denial of the writ. Defendant was duly served with process, but defaulted, in her husband's action of divorce, but four days later appeared and filed her motion to set the judgment aside, but on its being overruled neither took an appeal nor sued out a writ of error, either remedy being available. More than two years thereafter she applied to this court for a writ of *certiorari*, basing her right to the writ on the ground that, under the statute, an allegation in her husband's petition, or a finding incorporated in the decree, that he had resided in this State one whole year next before the filing of his petition, was necessary to confer jurisdiction on the trial court, in the absence of an allegation or finding that the offense was committed in this State or whilst one or both of the parties resided in this State, and that there was no such allegation or finding. In the meantime the plaintiff, in reliance upon said judgment, has remarried. *Held*, that the writ, being purely discretionary, will be denied, on the ground that relator has slept on her rights and is guilty of laches.

Citations to Headnotes: 1, Appearances, 4 C. J. par. 59, and Judgments, 33 C. J. par. 51 and 34 C. J. par. 505; 2, Certiorari, 11 C. J. pars. 78, 133, 134, 137 (1926 Anno).

*Certiorari.*

WRIT QUASHED.

*Chilton Atkinson* for relator.

(1) Every petition for divorce in this State must contain the averment that the plaintiff has resided within the State one whole year next before the filing of such petition, or else that the offense or injury complained of was committed within this State, or while one or both of the parties resided within this State. R. S. 1919, sec. 1804. (2) In the absence of such allegation, the petition is fatally defective and will not support a judgment, the trial court lacking jurisdiction of the subject-matter. Cheatham v. Cheatham, 10 Mo. 299; Collins v. Collins, 53 Mo. App. 473; Sharpe v. Sharpe, 134 Mo. App. 281; Amerland v. Amerland, 188 Mo. App. 56. (3) The parties to a divorce suit cannot confer upon the court jurisdiction of the subject-matter, either by waiver or by consent. There is no common-law jurisdiction, and such matters are controlled entirely by statute. Sharpe v. Sharpe, 134 Mo. App. 281; Keller v. St. Louis, 152 Mo. 599. (4) A void judgment is subject to collateral attack. It is not necessary to appeal from such a decree. Hinkle v. Lovelace, 204 Mo. 226. (5) *Certiorari* is the appropriate remedy, where an inferior court acts without jurisdiction. State ex rel. v. Shelton, 154 Mo. 691; State ex rel. v. Guinette, 156 Mo. 526; State ex rel. v. Johnson, 138 Mo. App. 306. (6) And such is the case even though the applicant have a remedy by action. State ex rel. v. Dowling, 50 Mo. 136. (7) The decree and judgment deprived relator of her civil and property rights, without due process of law, and denied to her the equal protection of the laws. Sec. 30, Art. II, Mo. Constitution; Fourteenth Amendment of U. S. Constitution; Dorrance v. Dorrance, 242 Mo. 625.

*W. J. Geekie* for respondent.

State ex rel. Kennedy v. Hogan.

SEDDON, C.—This is a proceeding by writ of *certiorari* directed to respondent as the present judge of Division Number 16 of the Circuit Court of the City of St. Louis, otherwise known as the Court of Domestic Relations, commanding him to certify to this court a complete transcript of the record and proceedings in a certain divorce cause in that court, brought by James Kennedy, as plaintiff, against Katherine Kennedy, as defendant. Application for the extraordinary writ of this court was filed here by the relator on June 30, 1924, upon due notice given to respondent and to said James Kennedy. The writ issued on July 3, 1924, commanding respondent to make return thereto on or before August 2, 1924. The respondent sent suggestions to this court in opposition to the application for the writ, but they were received by the clerk of this court after the writ had issued. Pursuant to the command of the writ, respondent filed herein on August 2, 1924, his return thereto, consisting of a full, true and complete transcript of the record and proceedings in the said divorce cause, duly certified by the clerk of said circuit court. On October 11, 1924, respondent filed herein his motion to quash the writ and to dismiss relator's petition therefor.

The return shows that the petition of plaintiff, James Kennedy, in the divorce action, was filed in the Circuit Court of the City of St. Louis on February 16, 1922. It is entitled "James Kennesdy, plaintiff, vs. Kathrine Kennesdy, defendant," and contains the usual recitals that plaintiff and defendant were lawfully married in St. Louis, Missouri, on or about October 30, 1911, and that plaintiff continued to live with defendant, as his wife, until on or about December 9, 1920, during all of which time the plaintiff faithfully demeaned himself and discharged all his duties as the husband of defendant and treated her with kindness and affection. The petition then charges that "said defendant wholly disregarding her duties as the wife of the plaintiff (did) offer such indignities as to render the conditions of the life of the

plaintiff intolerable in this,'' then follows certain specific allegations of the nature of such indignities. We cannot commend plaintiff's divorce petition to the bar of this State as a model or form to be followed. It is replete with misspelled words, utterly lacking in punctuation and devoid of proper grammatical construction. Nevertheless, we find it states a cause of action for divorce upon the ground of indignities as prescribed by Section 1801, Revised Statutes 1919, especially in view of the fact that a decree has been entered thereon. The petition contains this recital: "Plaintiff further says that he is now and has been for *a* space of one whole year *f*efore fileing this petition, a resident of the State of Missouri, and now resides at St. Louis, Mo.'' The petition is verified by affidavit annexed thereto, signed "James Kenne*dy, Plaintiff*,'' and sworn to before a notary public. The affidavit is in statutory form with the exception of two misspelled words. It substantially complies with Section 1802, Revised Statutes 1919.

A writ of summons duly issued from the circuit court on February 17, 1922, directed to the Sheriff of the City of St. Louis, commanding him to summon "Kath*r*ine Kenne*s*dy'' to appear in said court on the first Monday of April next to answer the complaint of "James Kenne*s*dy'' as set forth in the annexed petition. The return of the sheriff is made thereon, showing that the writ was executed in the city of St. Louis, Missouri, on February 20, 1922, by delivering \a copy of the writ and petition as furnished by the clerk to "Katherine Kenne*dy*, defendant herein.''

At the February term, 1922, of said court, on March 20, 1922, in the cause entitled, "James Kennedy vs. Katherine Kennedy,'' the cause, by order duly entered of record, was assigned to Division Number 16 of said court. On April 7, 1922, at the April term, 1922, of said court, in cause entitled, "James Kenne*say* vs. Kath*r*ine Kenne*say*,'' a default by defendant was noted of rec-

ord, and, on motion of plaintiff, it was ordered by the court that "the petition herein be taken against said defendant as confessed, and that an inquiry be had."

On April 20, 1922, at the April term, 1922, of said court, in cause entitled, "James Kennedy vs. Kathrine Kennedy," a decree was entered of record, as follows: "Now at this day this cause coming on for hearing, comes the plaintiff by attorney, but the defendant being still in default, comes not; thereupon plaintiff submits this cause to the court upon the pleading and proof, and the court after hearing the evidence herein, being satisfied that the plaintiff is an innocent and injured party, and entitled to the relief prayed for in his petition, doth order, adjudge and decree that he be absolutely and forever divorced from the bonds of matrimony existing between him and said defendant and that he be restored to all the rights and privileges of an unmarried person, and that the defendant pay the costs of this proceeding, and that execution issue therefor."

On April 24, 1922, at the April term, 1922, of said court, in cause entitled, "James Kennedy vs. Katherine Kennedy, the defendant filed her personally-signed motion to set aside the decree of divorce, duly verified by the oath of defendant, which motion sets forth the following grounds:

"1.   That after copy of said petition was served upon defendant she was seriously ill with influenza; that immediately after the service of copy of petition in said cause, she went to a neighbor of hers in whom she had great confidence, asked him for his advice in the matter and requested him to refer her to a reputable attorney whom she could consult; that the name of this neighbor was Edward A. Bohan; that she was advised by Mr. Bohan that he would procure an attorney for her, and for her to do nothing about the matter until she heard further from him; that relying upon the advice of her said neighbor, she did not consult an attorney and had been waiting to hear from said Bohan; that during all

the time since said petition was served, defendant has been in very bad health and being without any means of support whatever, it was necessary for her to work whenever her health permitted her to do so and she was not able to get off prior to this time for her to look out for the case herself; that the first intimation that defendant had, that a decree of divorce had been granted to the plaintiff was when she saw it in the St. Louis Post-Dispatch on Friday, April 23, 1922; that immediately thereafter she telephoned to the home of said Bohan and found that he had been sick practically all the time since she consulted him and that he had, therefore, been unable to refer the case to an attorney.

"2. That defendant has since been advised by counsel that she has a good and meritorious defense to said cause of action of plaintiff and she desires to make a defense in said cause and to file a cross-bill therein.

"3. That plaintiff has been informed by reliable informants that an investigator from the Court of Domestic Relations would call upon her to investigate her case and since said investigator never came to her home she thought that no action would be taken in the matter."

On April 26, 1922, at the April term, 1922, of said court, in cause entitled, "James Kennedy vs. Katherine Kennedy," plaintiff filed his motion to strike from the files defendant's motion to set aside the decree of divorce.

On April 28, 1922, at the April term, 1922, of said court, the following order was entered of record in cause entitled, "James Kennesdy vs. Kathrine Kennesdy":

"The court having heard and duly considered the plaintiff's motion to strike defendant's motion to set aside decree from the files, heretofore filed and submitted herein, doth order that said motion be and the same is hereby sustained."

So much for the record here before us. We might add that respondent here is the present judge, having control of the records, of the so-called Court of Domestic

Relations, but at the times the foregoing proceedings were had of record that court was presided over by another and different judge.

The relator claims that, because of the ungrammatical and misspelled statement of offenses making up the charge of general indignities, the divorce petition utterly fails to state a cause of action. No good purpose can be served by here copying the specific charges of indignities set forth in that petition. It is sufficient to say that we have examined the same with a scrutinous eye and we are satisfied that the petition states a good cause of action on the ground of the specified indignities.

We also think that the fact that relator's name as defendant in the divorce proceeding has been misspelled in the caption of the petition and at other stages of the record, has been cured by the tenth clause of the Statute of Jeofails (Sec. 1550, R. S. 1919), which is as follows: "Nor shall any judgment . . . upon failure to answer . . . be reversed, impaired or in any way affected by reason of the following imperfections, omissions, defects, matters or things, or any of them, namely: . . . tenth, for any mistake in the name of any party or person . . . when the correct name . . . shall have been once rightly alleged in any of the pleadings or proceedings." So we have heretofore held. [Walker v. Railroad Company, 193 Mo. 1. c. 475; Morrison v. Turnbaugh, 192 Mo. 1. c. 446.] The record shows that the writ of summons was served by the sheriff upon relator, Katherine Kennedy, personally, together with a copy of the divorce petition. The petition was verified by the plaintiff, James Kennedy. At least two of the record entries in the proceeding bear the caption, "James Kennedy vs. Katherine Kennedy." Within four days after the decree was entered, relator filed her verified motion in the trial court to set the decree aside, alleging that she had been personally served with a copy of the petition. So it is quite evident to us she was not misled by the fact that her name was misspelled in

the title or caption of the petition and knew, or at least believed, that she was the party defendant named therein. Where a defendant is misnamed in the petition and is personally served with process, and appears at some stage in the proceeding, the misnomer is cured by our Statute of Jeofails. [State ex rel. v. Burr, 143 Mo. l. c. 212.]

Relator contends that, under our divorce statute (Sec. 1804, R. S. 1919) an allegation in the petition of the residence of the plaintiff within this State for one whole year *next* before the filing of the petition, or a finding of that fact incorporated in the decree, is jurisdictional, absent an allegation or finding that the offense or injury complained of was committed within this State, or whilst one or both of the parties resided within this State. She further contends that the necessary word "next" is omitted from the allegation of residence in plaintiff's petition, and that there is no allegation that the injury complained of was committed within this State, or while one or both of the parties resided within this State. Furthermore, that the decree of divorce omits the jurisdictional finding to that effect, and that, therefore, the decree is void for want of jurisdiction in the trial court. Relator directs our attention to several decisions of the respective Courts of Appeals of this State in support of her contention. We do not find it necessary in this proceeding to comment upon the force and effect of those decisions, further than to say that it appears, in each instance, the attack upon the divorce decree and the jurisdiction of the trial court was promptly and seasonably made by direct attack, either by appeal or writ of error, within the statutory periods prescribed for such action. Here, no appeal was taken or writ of error sued out by relator, although such avenue of attack was open to her. She filed her motion to set aside the decree within four days after the decree was entered of record and at the same term of court. No motion for a new trial was filed, unless, perchance, her motion to set aside

the decree be taken and considered as serving the purpose of a motion for new trial. No motion in arrest of judgment was filed. Relator stood by and permitted the term of court at which the decree was entered to pass without any effort on her part to attack the jurisdiction of the court or the validity of the decree. Now she here invokes the aid of this court by the extraordinary writ of *certiorari* by virtue of the superintending control of this court over an inferior court granted by our State Constitution. [Sec. 3, Art. 6, Mo. Constitution.]

The decree she seeks to annul was entered on April 20, 1922. Relator's petition for the extraordinary writ of this court was filed here on June 30, 1924, more than two years after the judgment or decree of the trial court was entered of record. No excuse or reason is given by relator for this long delayed action on her part. It has been made to appear to this court, not by the record before us, but by the respondent in his suggestions in opposition to the writ, that James Kennedy, the plaintiff in the divorce action, has re-married. When or how soon after the entry of the decree does not appear. But we have no reason to doubt the statement of the honorable judge of the trial court to that effect. Neither is the fact disputed by relator. So we are asked by relator to face the anomalous situation of declaring void a judgment or decree of an inferior court entered of record after personal service of summons has been had on the defendant therein, and where the plaintiff, relying upon the presumption of right action and jurisdiction of the trial court, has re-married, with the possibility of issue having been born of the second marriage. In other words, relator asks this court to brand her former husband and his second wife as open adulterers, and to cast a stigma upon their off-spring, if such there be, now or hereafter born. And this, when by prompt and seasonable action taken by appeal or writ of error, relator might possibly have prevented the re-

marriage of her former husband and have averted the serious and far reaching consequences which will necessarily follow the quashing of the divorce proceedings. We think relator has slept upon her rights. She is guilty of laches.

In 11 Corpus Juris, 146, it is said, in speaking of the writ of *certiorari*: "Where the question is not regulated by statute or the fixed procedure, it may be stated as a general rule that the writ must be applied for within a reasonable time, or the same will be refused or dismissed if improvidently issued." And again, on page 147, it is said: "Where a reversal of the proceedings sought to be reviewed . . . is calculated to derange the interests of society, a party is required to act speedily in making his application, and any unreasonable delay in so doing will warrant the refusal or dismissal of the writ." Ample authorities are cited by the text-writer in support of the rule.

The matter is not one of first impression in this State. In State ex rel. Berkshire v. Ellison, 287 Mo. 654, this court quashed a writ which had been improvidently issued on the ground of laches. The writ sought to quash an adverse judgment against relator entered by the Kansas City Court of Appeals. The application for the writ was made more than a year after the opinion of the Court of Appeals had been handed down and more than nine months after a motion for rehearing had been overruled. In passing on the matter, GRAVES, J., delivering the opinion of this court, said:

"But whatever the result of our superintending control of the appellate courts may be by our writ of *certiorari,* it is with this court a purely discretionary writ. The great number of applications refused, and the few granted, by this court, bespeak the discretionary character of this writ in this court. The books bespeak the further fact, that when upon a full hearing, we conclude that our writ was improvidently granted, we have always promptly quashed the same. So we need not seek

further authority for the fact, that with this court, this character of a writ of *certiorari,* is purely discretionary. Our whole course of action so shows.

"In this case, however, we have a new situation urged for the quashing of our writ. It is urged that the application was not timely made; that relators were guilty of laches in not acting sooner. We think that there is substance in this contention. . . . The relator here waited nine months from the time the motion for rehearing was overruled. Not only so, but it waited until after the law directs that the Court of Appeals mandate should go down, and until after such mandate had in fact gone down, and the circuit court acting thereon entered up the judgment directed by the Court of Appeals. In other words, in this particular case the judgment of the Court of Appeals had been fully executed, some seven months before there was an application here to have that judgment reviewed and quashed through our writ of *certiorari.* Was such application timely under these facts? We think not."

In State ex rel. v. Gibson, 187 Mo. 536, this court held, on an application for the extraordinary writ of mandamus, where relator sought to compel the trial judge to settle and sign a bill of exceptions more than one year after he had refused to settle and sign it and that long after relator knew of this refusal, that relator was guilty of laches and this court denied the writ for that reason.

Learned counsel for relator recognizes the fact that prompt action should be taken to attack the validity of a divorce decree. We quote from his brief herein filed; "We respectfully submit that the only adequate remedy against a void decree of divorce is *the speedy remedy.* . . . Public policy requires that all doubts concerning the validity of a divorce decree should be settled *as promptly as possible.*" Relator has failed to act as promptly as possible. We do not find it necessary in arriving at a decision in this proceeding to pass upon

the validity of the divorce decree or whether it is subject to collateral attack, and we do not rule upon those matters. We do find that the writ of *certiorari* was improvidently issued by this court, and that the writ heretofore granted, for the reasons herein stated, should be quashed, and it is so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.