THE STATE EX REL. AL. G. BARNES AMUSEMENT COMPANY V. FRANCIS
  H. TRIMBLE ET AL., Judges of Kansas City Court of Appeals.—
  300 S. W. 1064.

Court en Banc, December 2, 1927.

*Frank M. Lowe* for relator.

276

*Atwood, Wickersham, Hill & Chilcott* for respondents.

ATWOOD, J.—Relator seeks to quash the record of the Kansas City Court of Appeals on a second appeal in the case of John E. Reynolds, Respondent, v. Al. G. Barnes Amusement Company, Appellant, wherein respondent's judgment for $7,500 was affirmed. The conflicts alleged relate to the law applicable to acts of fellow-servants.

Looking to the .opinion for the facts, as we must in this class of *certiorari* proceedings, we find this statement by Judge ARNOLD:

"On the second trial the evidence consisted largely of the testimony produced on the former trial. However, some witnesses were introduced by defendant who had not testified before. We have examined this evidence and find that it does not change the material

facts shown in the former trial, which were set out in detail in our former opinion, and which we do not deem necessary to repeat herein. Reference is made therefore to our former opinion for a statement of the facts which is adopted as the statement of facts herein.''

Turning to the first opinion, written by Judge TRIMBLE and reported in 253 S. W. 140, we read statements of facts pertinent to the conflicts here alleged as follows:

''The defendant owns and exhibits a traveling circus. Plaintiff claims he was an employee thereof engaged in carrying seats out of one of its tents preparatory to defendant's removal from its show site in Kansas City to its next stand or place of exhibition, and that while doing that work he stepped into a stake hole and broke his leg. He brought this suit, based on negligence and also wanton, brutal and malicious failure to thereafter care for and aid him, and prayed for $25,000 actual and $25,000 exemplary or punitive damages. . . .

''There was ample evidence, and indeed it was conceded, that it was the custom for all working places about a circus to be lighted, for a light to be on every wagon being loaded and for all holes made to be filled up or covered over and for none to be left open . . .

''It would seem that the failure to have sufficient light and the leaving of a hole unfilled when it was the custom to have light and to fill all holes, would combine to bring about the breaking of plaintiff's leg, though the ultimate and principal cause of the injury was the leaving of the unfilled hole. . . .

''However, there was evidence of all the above-mentioned charges, and the jury could well say that they all combined to help bring it about. It is true, no one affirmatively and expressly testified to seeing this particular hole made by the pulling of a particular stake under the superintendence of any of the superiors, but the evidence is that the menagerie tent was down, its stakes had been pulled, no hole was there before that, the pulling of stakes and the taking down of the menagerie tent was done under direction of the supervisors, the stake hole was that of a menagerie tent stake, and from these facts the jury could find that it was a hole left in the ground by the removal of one of the menagerie tent stakes in the taking down of said tent. . . .

''It is conceded that it was the custom to at once fill or cover all holes made by the removal of tent stakes, and hence it was defendant's duty to leave no unfilled or uncovered stake holes. . . .''

The opinion by Judge ARNOLD here sought to be quashed states plaintiff's general charge of negligence to be defendant's failure to furnish plaintiff a reasonably safe place in which to work, including the charges of failure to fill the stake hole and failure to furnish sufficient light; and as to the evidence thereon, states:

"There was testimony in plaintiff's behalf that the only light thrown upon the immediate locality of the injury came from one or other of the tents. We find no evidence covering the point as to whose duty it was to place sufficient lights to render the place reasonably safe for the performance of the labor in which plaintiff was engaged. Certainly none tending to show that plaintiff had any control over the lights, or over other conditions which contributed to his injury, nor any which tended to show that his fellow-workmen had control over them."

Portions of the opinion particularly complained of as in conflict thus immediately follow:

"In this situation it was defendant's duty to exercise ordinary care to see that plaintiff's place of work was reasonably safe. This was a continuing non-delegable duty. [Koerner v. Car Co., 209 Mo. 158, 107 S. W. 481; Scheidler v. Iron Works, 172 Mo. App. 688, 155 S. W. 897.] There was substantial evidence to the effect that lights were not furnished either to light the locality of the injury, or to place at the hole made by the removal of the stake. As to whose duty it was to furnish these lights does not specifically appear. But under the general rule, it was defendant's duty to make the place reasonably safe for plaintiff's labor. It follows that if the lights were not furnished by defendant, or if furnished and the foreman failed to use them, there was still the negligent act of defendant.

"It was defendant's duty, under the circumstances in evidence, to use reasonable care to see that the lights in question were so placed as to render plaintiff's place of labor reasonably safe, and a failure so to do was negligence. The fact that the omission may have occurred through the fault of its servants and agents charged with said duty will not release defendant from liability. And this observation applies as well to the question of filling and tamping the stake hole as to the failure to furnish sufficient light. [Lampe v. Am. Ry. Exp. Co., 266 S. W. 1009, and cases therein cited.]"

In the light of the facts thus appearing in the two opinions we are unable to discover any conflict between the opinion here attacked and the controlling decisions of this court. The cases cited by relator are ruled on facts wholly different. For instance, the particular acts of omission pleaded as negligence in this case were not necessary or customary in such work, the existence of a contrary custom the observance of which would have rendered plaintiff's place of work reasonably safe being clearly shown, and hence, Crawford v. K. C. Bolt & Nut Co., 278 S. W. 1. c. 377, and other cases cited in Paragraph 1 of relator's points and authorities as applicable where the place of work is temporary and transitory, are not here applicable. Nor are such cases as Bradley v. Tea & Coffee Co., 213 Mo. 320, and Francis v. Railroad Co., 110

Mo. 395, and other like cases cited under points two and three. These are cases where the master promulgated rules which the servant alone or in company with fellow-servants violated and was injured. The above statement of facts clearly shows that plaintiff had nothing whatever to do with the negligent omissions complained of, and that they were directly attributable to other employees of defendant working under the immediate direction of defendant's supervisors and their superiors. Furthermore, even if as the opinion indicates, the evidence is not clear as to just which of defendant's agents, servants and employees were guilty of the omissions complained of, we must accept respondents' statement that neither plaintiff nor his fellow-workmen "had any control over the lights or over other conditions which contributed to his injury." Consequently, the cases cited under paragraph four of relator's points and authorities are also without application. The primary duty to furnish a safe place to work rested upon defendant. Before the fellow-servant rule could be invoked as a defense it was of course necessary for defendant to prove that the acts of negligence complained of were the acts of plaintiff's fellow-servants and this, under the facts disclosed by the opinions, defendant failed to do.

The writ should be quashed for the further reason that it was not applied for within a reasonable time under our ruling in State ex rel. Berkshire v. Ellison, 287 Mo. 654, and subsequent cases. Instead of making application within thirty days from July 13, 1925, when the motion for rehearing was overruled, appellant waited for more than three months, filing his application for writ of *certiorari* here on October 24, 1925. It is true that on July 13, 1925, after the motion for rehearing was overruled by the Kansas City Court of Appeals, appellant there filed a motion to certify and transfer the case to the Supreme Court on the ground of conflict with controlling decisions of this court, but we find no constitutional or statutory authority for such a motion by counsel. Section 6 of the Amendment of 1884 of Article VI of the Constitution lodges the power to certify and transfer cases to the Supreme Court on this ground solely on the determination of one of the judges of the court that he deems it to be contrary to a previous decision of one of the Courts of Appeals or of the Supreme Court. This motion might well have been summarily stricken from the docket, as was done in Barnett v. Building Co., 177 Mo. App. 477. Opportunity for counsel to point out conflicts is amply afforded in a motion for rehearing, and stay of mandate pending application for our writ should be obtained by timely application to the Court of Appeals therefor. In the Berkshire case we said the application for stay of mandate "should shortly follow the overruling of the motion for rehearing," and the limit of reasonable time within

which application should be made here for writ of *certiorari* was there held to be thirty days from the date of the overruling of the motion for a rehearing. No explanation or excuse is given for the unusual delay in this case.

For the reasons above stated our writ of *certiorari* heretofore issued is quashed. All concur, except *Graves, J.,* who dissents.