STATE OF MISSOURI, at the Relation of J. E. TAYLOR, Attorney General, Relator, v. SAM C. BLAIR, Judge of the Circuit Court of Cole County, Missouri.—Nos. 40690, 40691, 40692.—210 S. W. (2d) 1.

Court en Banc, April 12, 1948.

*J. E. Taylor*, Attorney General, and *Gordon P. Weir*, Assistant Attorney General, for relator.

*S. W. James, Jr.*, for respondent.

588

LEEDY, C. J.—The State, at the relation of the Attorney General, instituted in this court three separate proceedings in certiorari to review the records of the Circuit Court of Cole County (of which the respondent Hon. Sam C. Blair is judge) in certain habeas corpus proceedings lately pending therein, and severally brought by Ferguson, Slyker and Debert (hereinafter referred to as petitioners) to effect their release from the Missouri Penitentiary. On the merits there is but one point involved, and as it is common to all of the cases, the three proceedings have been consolidated, and will be disposed of in one opinion.

Each petitioner had been convicted and sentenced under the Habitual Criminal Act, Sec. 4854, R. S. '39 and Mo. R. S. A.; Fer-

guson and Debert to life imprisonment for first degree robbery, and Slyker to ten years for forgery. The point in controversy is whether the petitioners were amenable to the provisions of that Act. It was made to appear (and it is undisputed) that when the offenses for which they were subsequently convicted were committed, each petitioner was at large from the penitentiary under a conditional commutation of sentence (extended by the Governor), and the informations so alleged. In this state of facts, it was their contention that they had not been "discharged, either upon pardon or upon compliance with the [previous] sentence," the condition specified by Sec. 4854 as that upon which one subsequently convicted may [2] be subjected to the more severe penalties provided by that section. It was contended, for this reason alone, that the sentences under the Habitual Criminal Act were unauthorized. As no other question arises as to its applicability, it is unnecessary to further develop the facts. The respondent judge sustained petitioners' contention, and adjudged each of the challenged sentences to be erroneous as to time. Purporting to act under Sec. 1660, he proceeded to resentence them (as of the date of the entry of the original judgments) to terms in the penitentiary as follows: Ferguson, 12½ years, Debert, 7 years, and Slyker, 7 years, 3 months. However, the judgments expressly *denied* their prayers to be discharged from the custody of the warden. This is understandable as to Debert, who was held to complete previous sentences, but in the Ferguson and Slyker cases the record negatives the idea of any such reason.

The precise question here involved was determined adversely to petitioners' contention in the very recent case of State ex rel. Stewart v. Blair, J., 356 Mo. 790, 203 S. W. 2d 716 decided en banc July 14, 1947, one judge dissenting. The Stewart case was decided after the judgments here challenged were rendered, so the respondent judge did not have the benefit of that precedent. Every argument here advanced is answered by that decision. We are satisfied with the reasoning and result there reached, and adhere.to it. The respondent judge having exceeded his authority in holding that petitioners were not subject to the Habitual Criminal Act, the record thereof and judgment based thereon should be quashed, unless there is merit in respondent's motion to quash the instant certiorari proceedings, a question we now proceed to consider.

The dates of the judgments in petitioners' habeas corpus cases were as follows: In Ferguson's, on June 7, 1946; in Slyker's, on October 11, 1946, and in Debert's on March 17, 1947. It appears that at least in Debert's case (in all of them the Attorney General appeared as counsel for the warden) the respondent judge, at the time judgment was entered, took this position, as shown by the record certified here:

"THE COURT: If you have any serious doubts as to my ruling, I wish you would take this to the Supreme Court on certiorari and let them decide whether I am right or wrong in my theory. . . . This man will be in the penitentiary for some time, and I would like to have this point resolved. It is the order of this court that you take this up."

Notwithstanding this suggestion and direction, the fact is that certiorari was not applied for until October 9, 1947, on which date all three applications were filed, and the writs subsequently issued.

The motion to quash, after pointing out the several dates just mentioned, avers that relator "was guilty of laches in waiting the aforesaid periods of time, and long after the judgments complained of had been entered in the records of the Circuit Court of Cole County, and the terms at which they were rendered had expired, and long after the judgments had in fact been executed, the records of the Missouri State Penitentiary changed to correspond therewith, and two of the petitioners in the Circuit Court, Thomas J. Ferguson, Case No. 40692, and Stephen Slyker, Case No. 40691, had been released and discharged from the penitentiary under the sentences imposed upon them by the respondent, before making his applications for certiorari in said causes." The motion further avers that "by reason of the aforesaid facts and circumstances injustice, embarrassment and confusion would result to the said petitioners in said causes before the Circuit Court of Cole County and to the officers of the Missouri State Penitentiary, who are charged with the duty of requiring enforcement of the sentences imposed upon persons sentenced to that institution, in the event the judgments entered by the Circuit Court of Cole County and the sentences imposed thereunder should now be rendered invalid."

Although respondent vigorously briefs and argues the motion, relator has ignored it, and so we are left to determine the question unaided by the state's view of the matter. There is no statute or court rule limiting the time for applying for the kind of certiorari here involved, which is, in general, the same as the common law writ. [3] State ex rel. Kennedy v. Hogan, 306 Mo. 580, 590, 267 S. W. 619, 622, quoted with approval the following from 11 C. J. 146: "Where the question is not regulated by statute or the fixed procedure, it may be stated as a general rule that the writ must be applied for within a reasonable time, or the same will be refused or dismissed if improvidently issued." Respondent cites five cases[1] in support of the

---

[1]State ex rel. Kennedy v. Hogan, Judge, 306 Mo. 580, 267 S. W. 619; State ex rel. Hancock v. Falkenhainer, et al., 316 Mo. 651, 291 S. W. 466; State ex rel. Berkshire, et al., v. Ellison, et al., 287 Mo. 654, 230 S. W. 970; State ex rel. Scott v Trimble, et al., Judges, 308 Mo. 123, 272 S. W. 66; State ex rel. Al G. Barnes Amusement Co. v. Trimble, et al., 318 Mo. 274, 300 S. W. 1064.

motion, but in none of them was the proceeding brought by the state in its sovereign capacity to protect a public interest, as here. In each of them the suit was brought in the name of the state, but at the relation of, or to the use and benefit of private suitors, a situation unlike that at bar.

"Laches on the part of the government in bringing suit is said not to be a defense in the case of a claim which is founded on sovereign right. It is also observed that the laches of the officers of the government cannot be set up as a defense to a claim which is made by the government." 19 Am. Jur., Equity sec. 495. In 30 C. J. S., Equity sec. 114, it is said: "The doctrine of laches cannot be applied against public rights. While the contrary has been held, by the weight of authority the defense of laches is not available against the government, state or national, in a suit by it to enforce a public right or to protect a public interest, or, as the rule is sometimes expressed, the laches of its officers or agents will not be imputed to the government. This rule applies, however, only to suits brought by the government in its sovereign capacity to enforce or to protect a public or governmental right; if it sues for the use and benefit of an individual, or for the enforcement or the protection of a private and proprietary right rather than a public or governmental right, laches is pleadable against it the same as against an individual."

There are quo warranto cases in Missouri in which the defense of laches has been upheld—in at least one of which the proceeding was upon an information exhibited of the prosecuting attorney in his official capacity, and not at the relation of a private individual, State ex rel. Brown v. Town of Westport, 116 Mo. 582, 22 S. W. 888. In State ex inf. Otto, Attorney General v. School District of Lathrop, 314 Mo. 315, 284 S. W. 135, the proceeding in quo warranto was upon the information of the Attorney General, but at the relation of a private individual whose interest was held to be pecuniary and personal. These and similar cases are discussed and distinguished in State ex inf. McKittrick, Attorney General v. American Colony Insurance Co., 336 Mo. 406, 435, 80 S. W. 2d 876, 889, where it was pointed out that "in them the effort was to oust de facto municipal corporations, school districts, and the like, and the doctrine [of laches] was enforced against the State principally on the ground that the public interest would be better served by denying the ouster." Those cases were deemed not controlling in the American Colony case where the defense of laches aided by estoppel was denied. The latter case was quo warranto to oust insurance companies from the privilege of collecting a rate increase which had been denied by the Superintendent of Insurance. Citing 21 C. J., sec. 216, p. 217, it was held that laches would not be imputed to the State because of the long acquiescence of the Superintendent and the Attorney General

in the collection and impounding of funds arising from such rate increase.

Moreover, while as between private suitors certiorari is not a writ of right, and the issuance thereof rests in a sound judicial discretion (State ex rel. Duraflor Products Co. v. Pearcy, 325 Mo. 335, 344, 29 S. W. 2d 83, 87), yet the rule in this jurisdiction is that where the writ is applied for by the Attorney General, ''it goes as a matter of course and of right.'' State ex rel. Shartel v. Skinker, 324 Mo. 955, 961, 25 S. W. 2d 472, 475; State ex rel. Walker v. Dobson, 135 [4] Mo. 1, 19, 36 S. W. 238, 243; Ferris on Extraordinary Legal Remedies, sec. 174. The motion to quash is overruled.

The records of the Cole Circuit Court should be quashed, except insofar as the several judgments deny petitioners' prayers for discharge from the custody of the warden, as to which aspect of the judgments our writ should be quashed. It is so ordered. All concur.