METROPOLITAN ICE CREAM COMPANY, a Corporation, and JACOB L. SIMKOWITZ, Plaintiffs-Respondents, v. UNION MUTUAL FIRE IN- SURANCE COMPANY, a Corporation; FARMERS ALLIANCE INSUR- ANCE COMPANY, a Corporation; GRAIN DEALERS NATIONAL MUTUAL FIRE INSURANCE COMPANY, a Corporation; and WESTERN MILLERS' MUTUAL FIRE INSURANCE COMPANY, a Corporation, Defendants- Appellants.—No. 41047—216 S. W. (2d) 464.

Court en Banc, January 7, 1949.

728

*Franklin E. Reagan, Adolph K. Schwartz* and *Sievers & Sievers* for appellants.

*Victor Packman* and *Melvin L. Newmark* for respondents.

[465] ELLISON, J.—This cause comes to this court on our order transferring it from the St. Louis Court of Appeals under Art. V, Sec. 10, Const. Mo. 1945 and our Rule 2.06. The decision of that court is reported in 210 SW. (2d) 700.

The plaintiffs-respondents Ice Cream Company and Simkowitz, respectively tenant and owner of a building in St. Louis, sued the four defendant-appellant insurance companies under their several windstorm insurance policies, for damages to said building and machinery and equipment therein, allegedly resulting from a windstorm which caused a cooling tower, weighing about thirteen tons and supported

by the roof and walls, to collapse with the consequences aforesaid about 7:30 a. m. on the morning of November 30, 1944. Hereafter we refer to the parties as respondents and appellants. The appellants contended the evidence showed there had been no windstorm and that the collapse of the cooling tower was caused solely by overloading, faulty construction and deterioration of the building walls. They respectively moved for directed verdicts, which motions were overruled, and respondents recovered separate verdicts and judgments against the respective appellants aggregating $5747.67, which placed, the appellate jurisdiction in the Court of Appeals in the first instance, Art. V, Sec. 3, Const. Mo., 1945.

Appellants make three points in their brief in this court, which they say are "in addition to" the eleven points raised in their brief in the Court of Appeals. They are, that the trial court erred: (1) "in excluding competent evidence of expert witnesses as to the cause of the collapse of the brick west wall;" (2) "in denying appellants the right to cross-examine respondent's general manager, Atkinson, as to the Lilie-Hoffman contract;" (3) and because "five given instructions for respondents were erroneous." Actually all three of these points were presented in the Court of Appeals brief where they were III, IV, V and VII, but with different authorities cited.

We consider first appellants' contention that the trial court erred in excluding competent testimony from their two expert witnesses that the cause of the collapse of the brick west wall was not the wind but overloading, faulty construction and deterioration. There was evidence for respondents that a violent wind was blowing about 2 a. m. on the night of November 29-30, and a high wind on until morning. The highest velocity recorded during the night at the Weather Bureau, some distance away, was 23 miles per hour. It was 17 miles per hour when the cooling tower collapsed at 7:30 that. morning. The temperature was 16°. When the cooling tower fell the ruins showed it "had taken out part of the west wall (of the building) and caused the east wall to collapse on the ground out there, and there was sheet ice and water and general debris," but little snow or ice on the ground at other places. Most of this evidence came from respondents' witness Atkinson, manager of the Ice Cream Company.

Appellants presented two expert witnesses, Al P. Daly, a building contractor of 47 years experience in St. Louis, and Carl A. Koerner, a structural engineer. These witnesses testified that the walls of the building were overloaded, and that the faulty construction and condition thereof rendered them inadequate to support the cooling tower and to enable it to withstand wind pressure. But appellants' windstorm insurance policies were not conditioned against any such structural deficiencies. And so, in order for them to present a prima facie defense relieving them from liability it was necessary for them

to make a showing from which the jury could have found that the collapse of the cooling tower was *not* due to windstorm as a contributing cause, but *solely* to the structural deficiencies they had proven.

[466] As we read his testimony, witness Daly said he did not know whether the collapse of the structure resulted solely from the one cause or the other. And for that reason the trial court ruled correctly in excluding it. But as to witness Koerner, the situation is different. When he was asked as an expert by appellants' counsel whether in his opinion the structural defects he had described were the cause of the collapse "without the additional inter*ceding* [evidently meaning inter*vening* or contributing] cause of the windstorm," the trial court sustained the objection of respondents' counsel.

Counsel's objection was long, and included many things: such as that the witness' examination was made too late—eight days after the collapse; that conditions were not shown to be the same as to the nature and direction of the wind; how the I beams were set in the walls; height of the walls; nature of the stresses, etc.; and finally, that it invaded the province of the jury. But the witness had been on the ground, had seen the blueprints, and described conditions rather fully in his previous examination. It is evident to us that the court sustained the objection only on the ground last stated—that it invaded the province of the jury—just as the court had shortly theretofore expressly ruled in part with respect to the witness Daly. This same view was taken by the Court of Appeals. Its opinion [210 SW. (2d) 1. c. 704(9)] so construes the trial court's ruling.

Then the Court of Appeals opinion proceeds to hold that the evidentiary facts in the instant case were not "so far removed from the experience of the average person that a jury would be incompetent to pass upon them without the aid of an expert," and concludes the trial court did not err in sustaining the respondents' objection, and refusing to permit appellants' expert witness Koerner to express an opinion whether the collapse of the cooling tower was due solely to overloading and structural defects, and not to the windstorm. In this connection it should be remembered the records of the Weather Bureau showed the highest wind velocity of 27 miles per hour had occurred at 2 a. m., about 5½ hours before the collapse at 7:30 a. m. when the velocity had decreased to 17 miles per hour, and that the tower was filled with water and ice had formed thereon or therein.

In so holding the opinion relied chiefly on Fair Mercantile Co. v. St. Paul F. & M. Ins. Co., 237 Mo. 511, 519-23(4), 175 SW. (2d) 930, 934-6(4), where it was held expert testimony *was* admissible on the issue whether a building was destroyed by fire or an explosion, and many decisions were reviewed. Another case cited is Cole v. Empire District Elec. Co., 331 Mo. 824, 833(4), 55 SW. (2d)·434, 437(3, 4) where it was held expert testimony based on a hypothetical question should *not* have been admitted on the issue whether a fire was caused

by defective electric wiring, the evidence showing the fire started at the location of that wiring, within 15 to 30 minutes after the current had been turned on.

In our opinion these decisions do not support the conclusion reached by the Court of Appeals. As the Cole case, supra, holds a jury of laymen must be able to form an *intelligent* opinion, notwithstanding their inexperience, without the *aid* of expert testimony before such opinion testimony becomes inadmissible. We are unable to agree that in the instant case a jury of inexperienced laymen could have formed an intelligent opinion such as would have made the opinion of an expert structural engineer valueless and of no assistance to them.

As quoted in the Fair case cited by the Court of Appeals opinion here, with respect to complex and technical questions, it is stated in 20 Am. Jur., p. 647, § 775: "On such issues, testimony of one possessing special knowledge and skill is required in order to arrive at an intelligent conclusion. In such cases, witnesses possessing requite training, skill, or knowledge, denominated 'experts,' may testify, not only to the facts, but to their opinions respecting the facts, so far as necessary to enlighten the jury and to enable it to come to a right verdict. The theory is that experts have knowledge, training, and experience enabling them to form a better opinion on a given state of facts than that [467] formed by those not so well equipped, which is the case of the ordinary juror, and their opinions are admitted in evidence for the purpose of aiding the jury to understand questions which inexperienced persons are not likely to decide correctly without such assistance. Issues of this kind are said to create a necessity for the admission in evidence of the opinions or conclusions of witnesses who are shown to be specially skilled or experienced in the particular field in question." See also: 32 C. J. S., p. 75, § 446; p. 215, § 518; p. 217, § 520; Busch & Latta Paint Co. v. Woermann Constr. Co, 310 Mo. 419, 276 SW. 614, 620(11); Mann v. Grim-Smith Hosptial & Clinic, 347 Mo. 348, 353(2), 147 SW. (2d) 606, 608(3) and Hardwick v. K. C. Gas Co., 355 Mo. 100, 106(2), 195 SW. (2d) 504, 507(3).

We pass by briefly appellants' second assignment, complaining of the trial court's restriction of their right to cross-examine the respondent Ice Cream Company's manager, Atkinson, concerning the "Lilie-Hoffman" contract. That contract was one made by the Lilie-Hoffman Company in 1937 for the erection of the collapsed cooling tower involved in this case. Appellants' counsel asserted that former contract contained a guarantee that the tower would withstand a wind velocity of 90 miles per hour; and he sought to interrogate Atkinson about why he did not invoke that guarantee in his negotiations for a new tower in 1945, if he really believed the old tower had been destroyed by the wind. But Atkinson insisted the old contract was made six years before he began to work for the Ice Cream Company

and that he was not familiar with it. The incident was collateral, and we think the trial court did not abuse its discretion in refusing to permit appellants' counsel to protract the cross-examination.

We also pass by, without discussion, appellants' third assignment complaining of the giving of respondents' instructions to the jury numbered 1 to 5. This assignment is dealt with in the Court of Appeals opinion [210 SW. (2d) l. c. 705 (11-16)]. We shall not protract this opinion by discussion of the instructions, inasmuch as we have upheld appellants' contention on their first point and the cause must be reversed and remanded and the error, if any, probably will not recur on another trial. In fact, the Court of Appeals opinion also reversed and remanded the cause because of error in the admission in evidence of respondents' proofs of loss as evidence of the amount of their damages [210 SW. (2d) l. c. 703(7)].

For the reasons stated above the judgment is reversed and the cause remanded to the circuit court. All concur.