STATE of Missouri ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Successor to the State Highway Commission of Missouri, Appellant,

v.

Glenn E. McCANN, et al. Exceptions of Glenn E. McCann, et al., Respondents.

No. WD 35,227.

Missouri Court of Appeals, Western District.

Dec. 11, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 29, 1985.

Application to Transfer Denied April 2, 1985.

Bruce A. Ring, Chief Counsel, Kansas City, Earl H. Schrader, Jr., Kansas City, Leland F. Dempsey, Asst. Gen. Counsel, Missouri Highway & Transp. Com'n, for appellant.

James W. Farley, Becky Ingrum Dolph, Farley, for respondents.

Before DIXON, P.J., and SHANGLER and SOMERVILLE, JJ.

SHANGLER, Judge.

The Missouri Highway and Transportation Commission commenced a series of condemnation actions to take private lands for the construction of Interstate 435 in Platte County around the circumference of Kansas City to facilitate interstate traffic flow as well as access to that environ. The condemnation actions began in the circuit court of Platte County in early 1974 and continued into 1975. The commissioners duly returned reports and thereafter the Highway Commission as well as all the landowners excepted to the awards. These separate litigations [fifteen in number] remained altogether quiescent until year 1983 when the Highway Commission moved for trial settings—on March 8, 1983, as to one aggregate of the cases, and on May 18, 1983, as to the other. The landowners moved to dismiss the exceptions for want of prosecution; and after hearing and rehearing, the court entered judgments of dismissal as to all fifteen cases.

The Highway Commission contends on appeal that (1) as an agent of the sovereign it is immune from a termination of its rights due to delay or passage of time, and hence from judgment of dismissal, and (2) that the delay in the prosecution of the exceptions was, in any case, excusable.

The motions to dismiss were heard separately, but adjudicated on the same evidence:

In 1970 the Congress authorized additional interstate highway construction, and I-435 was an adjunct of that project. That route was not a part of the original interstate system design, so that it fell to the Highway Commission to establish a location for the way. The purpose of that improvement was not only to facilitate interstate traffic but to provide vehicular access to and around Kansas City. A segment of I-435 was designated to run through Platte County and to traverse incorporated [Kansas City] and unincorporated areas of that locale. That region was then for the most part agricultural and so without the network of service and access roads usual to developed areas. At this same time, however, the area was in transformation: the recent completion of the Kansas City International Airport was a stimulus for market speculation of land located within a ten-mile perimeter. As a result, land prices within that ambit were at an average of $5200 per acre in 1974, and some choice locations yielded as much as $12,000 per acre. The expected development did not come to pass, however, so that the average price per acre plummeted to $1350 by 1983.

It was against this scene that the Highway Commission commenced design for the I-435 installation. The witness Satterlee, district engineer for Missouri, testified that the basic information from which the commission adduced its traffic projections was the 1970 census. That source indicated "substantial growth in the vicinity of the airport." In addition to the census information, the Highway Commission depended on its own system of traffic projection to design the location of the route, the num-

ber of lanes, interchange locations and cross-streets. The preliminary plans were submitted to a "design public hearing," as prelude to the development of detailed plans for the entire I–435 project. Those plans were filed with the condemnation petitions, and acquisition of the right-of-way commenced. A segment of the addition to the I–435 system impinged on Kansas City and was designed in consultation with that municipality. The plan contemplated a reticule of access roads, cross-roads and cross-street structures as appurtenances of the highway, and an urban agreement was concluded between the State and Kansas City to that end. The construction was to be installed conformably to the master plan conceived by the municipality for that area of Platte County.

The condemnation petitions were all filed by the end of March, 1975. A glimmer of doubt as to the integrity of the plans for the highway occurred to the Highway Commission as early as 1974, even while these expropriations were still under way. Commission studies confirmed that the oil embargo of that year had reduced the number of vehicle miles of travel in the vicinity of the proposed improvements. The intimation of a continued highway disuse was confirmed in 1979 when the Commission determined another pattern of decreased vehicle miles traveled, this time due to increased fuel prices. The Commission determined to reevaluate the continued efficacy of the plans for the I–435 project, but decided to await the 1980 Census for that purpose—data not available until 1981. The Commission commenced the redesign in earnest in 1981, and concluded the work in February of 1983. The district engineer Satterlee attributed the need to redesign as much to the failure of Kansas City to disclose its plans for the access and other appurtenant roads, as to the permanently diminished traffic use. In 1981, with the 1980 Census data in hand, the Commission began the redesign. In February of 1982, Kansas City made known its access plans, and in February of 1983, the Commission

completed a revised design for the I–435 project. To accomplish the redesign, the Commission undertook to reappraise the affected properties.

Then on March 8, 1983, the Highway Commission moved for trial dates as to six of the exceptions, and on May 18, 1983, moved for trial dates as to the other nine exceptions. The evidence already recounted was adduced, and the court dismissed the fifteen exceptions for want of prosecution. The record discloses that these separate actions were dormant for periods which ranged from six years and eight months to eight years and six months. There was no activity of any kind in any of these cases from the report of the commissioners and payment of the awards to the motions for trial dates. In that interim, however, numerous other tracts taken in those condemnation proceedings were concluded by settlement—before and after trial settings—and by jury verdicts.

The appeal contends that the state as sovereign enjoys immunity from a termination of any right or interest from mere delay—whether from laches, general limitations, prescription, adverse user, or negligence—so that the judgments of dismissal for want of diligent prosecution were unlawful. To sustain contention, the Highway Commission advances numerous aphorisms: that laches does not apply against the public right [*State ex rel. Taylor v. Blair*, 357 Mo. 586, 210 S.W.2d 1 (banc 1948)], that statutes of limitation do not affect the sovereign unless made expressly applicable to the State [*State ex rel. Robb v. Poelker*, 515 S.W.2d 577 (Mo. banc 1974)], and that a judgment may not rest upon the negligent lapse of the sovereign without its consent [*Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864 (Mo. banc 1983)].

■■■ These principles appertain to litigants *inter sese*, not to courts. They ensure that *as between suitors*, the public right not go by lapse of time or default.

The judgments of dismissal for want of diligent prosecution stand on a different ground. They were not exercises by the court in favor of any party, but vindications of its own process. It is a power which inheres in the quintessential function of a court: to administer justice. The power of a court " 'to do all things that are reasonably necessary for the administration of justice'—in order that it may preserve its existence and function as a court [are] powers [which] exist and inhere merely because it is a court and irrespective of legislative or constitutional grant." *State ex rel. Gentry v. Becker*, 174 S.W.2d 181, 183[1] (Mo.1943). Thus, the duty of a court to preserve the integrity of its process antecedes legislative or even constitutional grant and so—contrary to contention—depends on neither. *Loftus v. Lee*, 308 S.W.2d 654, 660[6] (Mo.1958); 20 Am.Jur.2d *Courts* § 79 (1965). In cognate terms, an attempt by the legislative department to impose an undue delay or other burden upon the administration of justice [as a peremptory entitlement to a continuance in a judicial proceeding by the fact that the party or attorney is a member of the general assembly then in session] encroaches upon the inherent function of the judicial department to administer justice, and so is unconstitutional. *Kyger v. Koerper*, 355 Mo. 772, 207 S.W.2d 46, 49[5, 6] (banc 1947). The nondelegable duty of the court to administer justice evenly as to all parties is embodied in our state constitution [Article I, § 14]: "That the courts of justice shall be open to every person ... and that right and justice shall be administered without sale, denial or delay." *Kyger v. Koerper*, supra, 207 S.W.2d l.c. 49[5, 6]; *Loftus v. Lee*, supra, l.c.660. The power to prescribe rules of procedure to facilitate the administration of justice also inheres in the court function. *In re Sparrow*, 338 Mo. 203, 90 S.W.2d 401, 403[4] (banc 1935); 20 Am.Jur.2d, *Courts* § 82 (1965). That power [also embodied in our constitution—Article V, § 5], when exercised to dismiss a pendent cause of action for neglect to pros-

ecute, prevents an abuse of process, and so subserves the essential duty of a court to administer justice. *State ex rel. Missouri Highway and Transportation Commission v. Kersey*, 663 S.W.2d 364, 366[1] (Mo. App.1983).

The diffuse and lumbered Highway Commission arguments reduce to the contention that absent a rule of court or statute expressly applicable to the sovereign, the dismissals for failure to prosecute the exceptions were without authority of law. Our discussion already given dispatches that contention: a court has the duty to try fairly and without undue delay the causes presented for adjudication, and the commensurate power to regulate a party from an obstruction of that process. *Kyger v. Koerper*, supra, 207 S.W.2d l.c. 49[5, 6]; *Loftus v. Lee*, supra l.c. 660 [4–6]. Taken on its own terms, the argument states a tautology. The dismissals for failure to prosecute were entered under Rule 67.02—a provision which indeed does not, in terms, run against the State. If, however, as the Highway Commission argument goes, a rule of court may indeed bind the sovereign to a dismissal of its cause of action where the rule expresses such an application, then, a rule although promulgated without such a specific reference, but interpreted by the court to that effect serves the same end. That is so because a court is the best judge of its own rules. *State ex rel. State Farm Mutual Auto Ins. Co. v. Keet*, 601 S.W.2d 669, 671[4] (Mo.App.1980). The courts have construed the involuntary dismissal proviso for failure to prosecute [Rule 67.02] to apply to the sovereign by reiterated decisions. *State ex rel. State Highway Commission v. Manley*, 549 S.W.2d 533 (Mo.App.1977); *State ex rel. Missouri Highway and Transportation Commission v. Kersey*, 663 S.W.2d 364 (Mo.App.1983). And, indeed, it is an interpretation of rule to which the sovereign has acceded without qualm or cavil [*see State ex rel. Missouri Highway and Transportation Commission v.*

*Kersey,* supra, l.c. 366[1]—no doubt, because the power of a court to protect its essential ability to function is self-evident as well as rooted. *State ex rel. Gentry v. Becker,* supra, l.c. 183[1–2]].[1]

■ The medley of maximus and citations the Highway Commission offers simply are beside the point. The immunity of a sovereign from suit without consent for damages for negligence [*Bartley v. Special School District,* 649 S.W.2d 864 (Mo. banc 1983)] or from other tort [*State ex rel. Missouri Division of Family Services v. Moore,* 657 S.W.2d 32 (Mo.App.1983)], or the immunity from a court rule for costs of an action—unless by authority of statute —[*Nicolai v. State,* 622 S.W.2d 764 (Mo. App.1981)], or the inapplicability of laches to prevent the sovereign from suit [*State ex rel. Taylor v. Blair,* supra], or the numerous other analogies the Highway Commission tenders, all rest on entirely different principles of governmental prerogative. They are not valid to supervene the power of a court to preserve itself—whether by order [*State ex rel. Becker v. Gentry,* supra, l.c. 183[1–2]; *Loftus v. Lee,* supra, l.c. 660[6]—or by rule *In re Sparrow,* supra, 90 S.W.2d l.c. 403[4]]. The analogy the Highway Commission draws from these and other decisions: that the dismissals for the negligent delay in prosecution of these exceptions amounted to judgments for tort damages against the sovereign without its consent simply does not follow. The motions of the landowners under the rule, and the judgments of the court, do not amount to separate actions against the State, nor

did they seek damages. They were devices to terminate, not to determine, litigation. Their proper adjudication rested not on consent, but on a concern for its own processes wisely exercised by the court. *State ex rel. Missouri Highway & Transportation Commission v. Kersey,* supra, l.c. 366[1].

The Highway Commission contends nevertheless that the delay to prosecute the exceptions was justified, and hence the dismissals were improper. It argues that the only issue for determination—the "after-taking valuation" was impossible until February of 1983, when the Commission engineers completed the revised design for the I-435 project. That redesign, argues the Commission, was made necessary by the failure of Kansas City to perform under the 1973 urban agreement with the State to provide access roads and other appurtenances to the I-435 construction. It was after the redesign for the first time, the argument goes, that the severance damage for the affected land was ascertainable. It was about then also that the Commission was in a position to employ appraisers for reassessment, and true determination, of the damages incurred by the severances.

■ The power of a court to dismiss an action for want of diligent prosecution, of course, must be exercised with a sound discretion. The decision to dismiss, however, will not be disturbed unless the discretion was abused. *State ex rel. State Highway Commission v. Graeler,* 495

---

1. Were we to assume, nevertheless, that the Highway Commission wears the mantle of the sovereign [and so stands to assert the claim of immunity] and that an express statute or rule only suffices to dismiss an action for delay in prosecution—such a statute *and* rule in very terms subject the adjudication of eminent domain exceptions to the rules of civil procedure.

Thus, § 523.050.2, RSMo 1978 and Rule 86.06 *both* provide that after exceptions are filed, the action proceed *as in ordinary cases of inquiry of damages.* This means that the trial de novo to a jury of the exceptions are governed by procedure applicable to ordinary civil cases. *State ex*

rel. *State Highway Commission v. Vorhof-Duenke Co.,* 366 S.W.2d 329, 336[4] (Mo. banc 1963); *State ex rel. State Highway Commission v. Green,* 305 S.W.2d 688, 694[6] (Mo.1957). Section 226.270, RSMo 1978, in turn, directs that the condemnation of lands shall proceed in accordance with Chapter 523 [insofar as applicable]. There is no doubt that Chapter 523 governs the land acquisitions, and hence the exceptions, before the trial court. Thus, the exceptions were governed by the rules of procedure and practice and the inherent power of a court to dismiss such proceedings for want of prosecution as embodied in Rule 67.02.

S.W.2d 741, 743[1] (Mo.App.1973). The burden to prove that discretion was abused rests on the party who challenges the action. *State ex rel. Missouri Highway and Transportation Commission v. Boise Cascade Corporation*, 655 S.W.2d 68, 69[1, 2] (Mo.App.1983). Discretion is abused when the decision to dismiss is so arbitrary and unreasonable as to demonstrate a lack of careful consideration and shock the sense of justice. *State ex rel. Missouri Highway and Transportation Commission v. Kersey*, supra, l.c. 368[5]. To come to decision to dismiss for want of prosecution, the trial court may consider not only the length of delay, but attendant circumstances. A fair test is whether the party had reasonable opportunity to bring the exceptions to trial. *State ex rel. State Highway Commission v. Milnes*, 573 S.W.2d 727, 728[1, 2] (Mo. App.1978).

The argument of the Highway Commission amounts to the contention that there was no reasonable opportunity to bring the exceptions to trial before 1983: that the condemnation petitions and appraisals were premised on the 1973 master plan for I–435 and access roads, and that the commissioners assessed damages on the basis of those plans. The failure of Kansas City to perform under the master plan—the argument continues—rendered proceedings premised on them "moot and void," and hence the Highway Commission was put to the necessity of a redesign finally made possible by the disclosure of its access plans by Kansas City in 1981 and completed in 1983.

The argument, however valid to justify the protracted nonaction to prosecute the exceptions, does not rest on fact. The Highway Commission evidence itself, given by engineer Satterlee, acknowledges that the contract dispute with the city was not the only reason which prompted the redesign of segments of the interstate. There was reason to believe, even as the condemnations were in progress during 1974 and 1975, that the traffic patterns in the area—

as the result of the oil embargo and other circumstances—were in the process of a permanently diminished use. The Highway Commission made the deliberate choice to defer further consideration for a redesign until the 1980 Census became available. Hence, as a logical concomitant, the prosecutions of these exceptions were also deferred. The Highway Commission evidence itself also contradicts the argument on appeal that the wait for the redesign was an essential precondition for the trial of the exceptions, since there was no evidence that the redesign actually affected any of the tracts involved—that is, that as to them any modes of access or other appurtenances were in any way different from the original design. Engineer Satterlee conceded, moreover, he could not say that any of the proposed streets under the original 1973 contract had anything at all to do with the lands in suit. The record also allows reason to doubt that any appraisals, other than those for the original takings, were ever undertaken—so that the contention that the delay to prosecute the exceptions were justified by that and other necessity was found against the Highway Commission on ample reason. The record discloses also that in this interim the Highway Commission contends it was not possible to determine the question of just compensation, numerous exceptions as to other tracts involved in the project were terminated by settlement or by jury trial.

On this record, we may not say that the dismissals were an abuse of discretion. Once the awards of the commissioners were paid into the registry of the court, the only issue for the jury was assessment of damages. *State ex rel. State Highway Commission v. Harris*, 417 S.W.2d 29, 31[1–6] (Mo.App.1967); Rule 86.08. It was the responsibility of the Highway Commission to prosecute its exceptions with reasonable diligence. *State ex rel. Highway Commission v. Milnes*, supra, l.c. 728[5]. The landowners, although exceptors also, had no responsibility for any such initiative. *City of Jefferson v. Capital City Oil*

*Company,* 286 S.W.2d 65, 69[4] (Mo.App. 1956).

 Contrary to contention, then, the joinder of issue—and hence posture for trial—did not depend upon a preliminary motion to the court. No formal pleading, other than the exception, is required of a landowner to pose the case for a trial by jury. *State ex rel. State Highway Commission v. Ellis,* 382 S.W.2d 225, 232[6, 7] (Mo.App.1964). The duty of the condemnor to prosecute the exceptions was not qualified by any affirmative act of the landowner, other than the assertion of the exception itself. Nor were the landowners obliged to prove actual injury from the delay or that the condemnor gained a particular advantage. *State ex rel. Missouri Highway & Transportation Commission v. Kersey,* supra, l.c. 367[2, 3]. The test is, rather, whether the exceptor [here the Highway Commission] had reasonable opportunity to bring the exceptions to trial. *State ex rel. Milnes,* supra, l.c. 728. The exceptions dismissed by the trial court languished, altogether in stasis, for a span of time from six years and eight months to eight years and six months. These lapses were unreasonable delays, and without justified explanation.

 Our practice allows a condemnor, even after the commissioners have reported, to amend the petition to correct errors, misdescriptions, to reduce the extent of the taking, to grant additional rights to the landowner, or simply to avoid an unjust enrichment. *State ex rel. State Highway Commission v. Dunard,* 485 S.W.2d 657, 660[3] (Mo.App.1972); *State ex rel. Morton v. Allison,* 365 S.W.2d 563, 566[3, 5] (Mo. banc 1963); *State ex rel. State Highway Commission v. Wright,* 312 S.W.2d 70, 73[2] (Mo.1958). To deny the condemnor an amendment for such purpose can constitute an abuse of discretion. *Joe D. Esther, Inc.,* 579 S.W.2d 155, 157[2] (Mo.App.1979); *Jackson County v. Hall,* 558 S.W.2d 791, 793[1] (Mo.App.1977). A condemnor may

not amend after the commissioners have reported, however, to add lands, or otherwise change the issues substantially, or to prejudice the rights of the landowner. *State ex rel. Morton v. Allison,* supra, 1.c. 565[3, 4]; *City of Blue Springs, Missouri v. Central Development Association,* 684 S.W.2d 44 (1984).

The Highway Commission does not argue that the trial court refused a tender to amend the interstate design. No such formal request was ever presented, and none refused. The Highway Commission merely argues a hypothetical: that the failure of the city to perform under the agreed master plan rendered the original appraisals as evidence obsolete, so that necessity dictated a redesign, reappraisal, and a delay in the prosecutions commensurate with that necessity. On this hypothesis, kept tacit from the landowners and the court until after the fact, the condemnor awaited the next Census, the redesign of a portion of the project, and reappraisals—and the lapse of from some seven to eight and one-half years—before any overture to prosecute the actions. Even if this self-motivated course of action were otherwise tolerable on principle, no evidence demonstrates that any of the tracts in dispute were affected by the redesign. The record suggests, rather, that the delay was prompted not by the necessity to garner trial evidence to meet a new issue, but to reap the windfall of a suddenly depressed land market.

The delays in the prosecution of the exceptions were unreasonable and without valid excuse. In *City of Jefferson v. Capital City Oil Co.,* 286 S.W.2d 65 (Mo.App. 1956), a lapse of five years and four months was sufficient to sustain dismissal for want of diligent prosecution. In *State ex rel. State Highway Commission v. Manley,* 549 S.W.2d 533 (Mo.App.1977), the failure of the condemnor to prosecute the exceptions for ten years warranted dismissal. In *State ex rel. Missouri Highway and Transportation Commission v. Kersey,* 663 S.W.2d 364 (Mo.App.1983), the elapse of between eleven and twelve years justi-

fied dismissal. The dismissal of landowners exceptions after eight years of non-action was sustained in *State ex rel. State Highway Commission of Missouri v. Milnes*, 573 S.W.2d 727 (Mo.App.1978). The neglect of the condemnor here to prosecute the exceptions for six years and eight months to eight years and six months, without excuse, constituted unreasonable delay. The judgments of dismissal were neither arbitrary nor otherwise unjust but were exercises of a proper discretion. The delay which prompted the dismissals was attributable entirely to the condemnor. The cases the condemnor cites—such as *State ex rel. State Highway Commission v. Gould*, 592 S.W.2d 172 (Mo.App.1979)—therefore, which find dismissal an abuse of discretion where the adversary contributed to the delay do not apply.

The judgments of dismissal are affirmed.

All concur.